# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 1, 2013 Session Heard at Knoxville

## WILLIAM H. MANSELL v. BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC ET AL.

**Direct Appeal from the Circuit Court for Smith County**
**No. 2010CV36     John D. Wootten, Jr., Judge**

**No. M2012-02394-WC-R3-WC - Filed August 20, 2013**

After a benefit review conference in the Department of Labor and Workforce Development failed to produce a settlement, the employee filed suit for workers' compensation benefits. Because the suit had already been filed, the trial court denied a request by the employer for an independent medical examination pursuant to the medical impairment rating ("MIR") process in Tennessee Code Annotated section 50-6-204(d)(5) (2008 & Supp. 2012). After hearing all other proof relating to the claim, the trial court awarded compensation to the employee and questioned the constitutionality of the MIR process. The employer appealed; the Attorney General filed a brief as amicus curiae; and this Court vacated the judgment and remanded the cause for additional proceedings. On remand, the Attorney General was added as a defendant to address the constitutional issue. The trial court considered additional evidence, which included an MIR report by an independent medical examiner, and ruled that section 50-6-204(d)(5), which requires our courts to consider the opinion of an independent medical examiner appointed under that section as presumptively accurate, is an unconstitutional infringement upon the powers of the judiciary. In the alternative, the trial court held that the statutory presumption of the accuracy of the report, if compliant with constitutional principles, was overcome by the other medical evidence, and that the employee was entitled to a 10% permanent impairment rating rather than the 7% rating in the MIR report. In this appeal, the employer and the Attorney General argue that the statute meets constitutional standards. We hold that the MIR process does not violate constitutional principles, and we further find that the evidence did not clearly and convincingly rebut the statutory presumption. The judgment of the trial court is, therefore, reversed in part, and affirmed and modified in part. The cause is remanded for additional proceedings consistent with this opinion.

**Tenn. Sup. Ct. R. 51, § 2; Judgment of the Trial Court Reversed in Part; Affirmed and Modified in Part; Case Remanded to the Circuit Court for Smith County**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Daniel C. Todd, Nashville, Tennessee, for the appellant, Bridgestone Firestone North American Tire, LLC.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Alexander S. Reiger, Assistant Attorney General, for the appellant, State of Tennessee.

William J. Butler and E. Guy Holliman, Lafayette, Tennessee; and Debbie C. Holliman, Carthage, Tennessee, for the appellee, William H. Mansell.

**OPINION**
**I. Facts and Procedural History**[1]

In June of 2008, William Mansell (the "Employee") suffered an injury to his right shoulder while working for Bridgestone Firestone North American Tire, LLC (the "Employer"). Dr. Sean Kaminsky, an orthopedic surgeon, treated the Employee and, after evaluating his condition, assigned an impairment rating of 3% to the body as a whole. Dr. Robert Landsberg, also an orthopedic surgeon, performed an independent medical evaluation and assigned a 10% impairment rating. When the Benefit Review Conference at the Department of Labor and Workforce Development ("DOL") ended in an impasse, the Employee filed suit. Prior to trial, the Employer requested the appointment of an independent medical examiner pursuant to the MIR process set out in Tennessee Code Annotated section 50-6-204(d)(5) (2008 & Supp. 2012), which provides, in pertinent part:

> When a dispute as to the degree of medical impairment exists, either party may request an independent medical examiner from the [DOL's] registry. . . . The written opinion as to the permanent impairment rating given by the independent medical examiner pursuant to this subdivision (d)(5) shall be presumed to be the accurate impairment rating; provided, however, that this presumption may be rebutted by clear and convincing evidence to the contrary.

---

[1] After our initial remand of this case, the facts and legal arguments pertinent to this appeal were developed at a hearing on July 27, 2012, in the Circuit Court for Smith County. By way of background, however, we have included the underlying facts and procedural history of the entire case, as set forth in our memorandum opinion in the first appeal. See Mansell v. Bridgestone Firestone N. Am. Tire, LLC, No. M2010-02093-SC-R3-WC, 2011 WL 3758562, at *1-3 (Tenn. Aug. 25, 2011) (per curiam).

(Emphasis added.)[2]  The Employee moved to quash the Employer's request, arguing that the Employer had waived its right to seek an independent medical examination by failing to do so during the Benefit Review Conference in the DOL.

The trial court granted the motion by the Employee, holding that the DOL had "relinquished jurisdiction" when the Benefit Review Conference reached an impasse, and that Tennessee Code Annotated section 50-6-204(d)(5) was "established for the [limited] purpose of attempting to resolve workers' compensation claims while the claim is before the administrative body . . . and not [after] a [c]ourt has acquired jurisdiction over the case." The Employer sought permission to file an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.  When the trial court denied the request, the Employer filed an application for an extraordinary appeal under Tennessee Rule of Appellate Procedure 10. On July 27, 2010, this Court denied the application, and the case proceeded to trial without an MIR evaluation or report.

At the conclusion of the presentation of evidence, the trial court accredited the testimony of the Employee and his wife, Regina, found that the impairment ratings of both Dr. Kaminsky and Dr. Landsberg had been assigned pursuant to the Sixth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guides"), and awarded benefits to the Employee, including future medical expenses and attorney's fees.  The trial court adopted the 10% impairment rating assigned by Dr. Landsberg, finding that it "more accurately follow[ed] the mandates of the AMA Guides, 6th Edition," and, therefore, was entitled to more weight than Dr. Kaminsky's impairment rating of 3%.  Applying the statutory one-and-one-half times multiplier, see Tenn. Code Ann. § 50-6-241(d)(1)(A) (2008 & Supp. 2012), the trial court determined that the Employee sustained a 15% permanent partial disability and, therefore, was entitled to sixty weeks of benefits.  As to the Employer's earlier request to appoint an independent medical examiner pursuant to the MIR process, the trial court observed that applying section 50-6-204(d)(5) after the filing of

---

[2] The MIR process has been further described as follows:

> The statutes and rules governing MIR reports reflect that the General Assembly's purpose was to provide an efficient method for presenting neutral, objective opinions regarding an employee's impairment to aid trial courts when the parties disagree regarding the extent of the impairment.  If the requirements in [Tennessee Code Annotated section 50-6-204(d)(5)] and the regulations promulgated thereto are met, the report becomes a self-authenticating official document certified by the [DOL].  The document itself gives rise to a rebuttable presumption that the impairment rating in the document is "the accurate impairment rating."

Williams v. United Parcel Serv., 328 S.W.3d 497, 502 (Tenn. Workers' Comp. Panel 2010) (footnote omitted) (quoting Tenn. Code Ann. § 50-6-204(d)(5)).

suit would serve as an intrusion upon the court's judicial powers to make specific findings of fact as to the applicable impairment rating.

This Court granted review of the appeal by the Employer and, in a memorandum opinion, vacated the judgment of the trial court. Mansell, 2011 WL 3758562, at *5. Although the Attorney General filed a brief as amicus curiae in the initial appeal, we concluded that the issue of the constitutionality of the MIR process contained in section 50-6-204(d)(5) "was not properly presented, argued, or litigated before the trial court." Id. at *3. Observing that the issue of whether the MIR process applies only to administrative proceedings in the DOL was "inextricably intertwined with the constitutional question," we also vacated the trial court's order granting the Employee's motion to quash. Id. at *4. In light of our remand to the trial court for consideration of the constitutional issue, we pretermitted consideration of the Employee's claim that the Employer had waived its right to seek the opinion of an independent medical examiner by failing to seek the remedy during the DOL proceedings. Id. at *4 & n.3. Our order further provided that "[s]hould there be an appeal from the judgment of the trial court resulting from this remand, the appeal shall be placed on the docket of this Court and shall not be referred to the Special Workers' Compensation Appeals Panel." Id. at *5 (citing Tenn. Sup. Ct. R. 51, § 2).

On remand, the Employee, without waiving any constitutional challenges to the MIR process, agreed to submit to an independent medical examination by Dr. H. James Weisman, an orthopedic surgeon listed on the DOL's registry. Dr. Weisman completed his MIR report pursuant to section 50-6-204(d)(5) and the Sixth Edition of the AMA Guides, assigning a 7% impairment rating as a result of the work-related injury. At the hearing on July 27, 2012, the parties submitted the MIR report by Dr. Weisman, and the Employee presented the deposition testimony of J. Edward Blaisdell, the MIR Program Coordinator at the DOL. No other evidence was presented by either party. The Employee, the Employer, and the Attorney General then presented arguments as to the constitutionality of section 50-6-204(d)(5) and related portions of the statute. Based upon this proof and the testimony in the initial proceeding, the trial court concluded that section 50-6-204(d)(5), if not limited to use by the DOL, is "an unconstitutional infringement on th[e] Court's powers to use the Rules of Evidence to establish or to approve the qualifications of experts, to weigh any and all relevant evidence, to compare through the crucible of cross-examination or even direct examination of any expert, the bias, prejudice or the like." The trial court also concluded, in the alternative, that even if section 50-6-204(d)(5) meets constitutional standards, the testimony of Dr. Landsberg from the original trial clearly and convincingly rebutted the subsequent MIR report of Dr. Weisman. In consequence, the trial court reinstated its original judgment, granting benefits to the Employee based upon the 10% impairment rating. The Employer has appealed, and, pursuant to our memorandum opinion in the first appeal, we again granted direct review.

-4-

## II. Standard of Review

A trial court's findings of fact in a workers' compensation case are reviewed de novo accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2008 & Supp. 2012); see also Tenn. R. App. P. 13(d). When credibility and the weight to be given testimony are involved, considerable deference is given to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. Madden v. Holland Grp. of Tenn., Inc., 277 S.W.3d 896, 898 (Tenn. 2009). "When the issues involve expert medical testimony that is contained in the record by deposition, determination of the weight and credibility of the evidence necessarily must be drawn from the contents of the depositions, and the reviewing court may draw its own conclusions with regard to those issues." Foreman v. Automatic Sys., Inc., 272 S.W.3d 560, 571 (Tenn. 2008) (citing Orrick v. Bestway Trucking, Inc., 184 S.W.3d 211, 216 (Tenn. 2006)).

The interpretation and application of Tennessee's Workers' Compensation Law are questions of law that are reviewed de novo with no presumption of correctness. Nichols v. Jack Cooper Transp. Co., 318 S.W.3d 354, 359 (Tenn. 2010). Issues of constitutional interpretation are also questions of law, which the Court reviews de novo without any presumption of correctness given to the legal conclusions of the courts below. Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009) (citing Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)). The Court must uphold the constitutionality of a statute wherever possible, beginning with the presumption that the statute is constitutional. State v. Pickett, 211 S.W.3d 696, 700 (Tenn. 2007).

## III. Analysis

The Employer contends that the trial court erred by finding Tennessee Code Annotated section 50-6-204(d)(5) unconstitutional as a violation of the separation of powers doctrine, and, in the alternative, by reinstating its original judgment granting the Employee benefits based upon the 10% impairment rating assigned by Dr. Landsberg without giving proper consideration to the presumptively accurate rating of 7%. The Attorney General has also filed a brief in support of the constitutionality of section 50-6-204(d)(5), asserting that the trial court erred because the MIR process does not violate the principles of separation of powers or due process. The Employee argues primarily that the statute is an unconstitutional infringement on the powers of the judiciary, but that, in any event, the trial court properly concluded that the presumption of accuracy of Dr. Weisman's MIR report was rebutted by clear and convincing evidence.

### A. Statutory Interpretation

A preliminary issue is whether the General Assembly intended for Tennessee Code

Annotated section 50-6-204(d)(5) to be interpreted so as to limit the MIR report to consideration by the DOL. The trial court, in the initial proceeding, declined to appoint an MIR physician at the Employer's request primarily because the presumptive accuracy of the report would intrude upon its judicial functions. The Attorney General intervened in the Employer's first appeal, maintaining that "the statute is not limited to the administrative process and requires only 'a dispute as to the degree of medical impairment,' which might arise either before or after an impasse in the benefit review process has been declared by the DOL." Mansell, 2011 WL 3758562, at *3.

Our consideration of a question of statutory construction is without any deference to the trial court. See In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009). When addressing the interpretation of a statute, well-defined precepts apply. Colonial Pipeline, 263 S.W.3d at 836. "Our primary objective . . . is to carry out the intent of the legislature without unduly broadening or restricting the statute." Nichols, 318 S.W.3d at 359-60. When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language. Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 101-02 (Tenn. 2006) (quoting Calaway ex rel. Calaway v. Schucker, 193 S.W.3d 509, 516 (Tenn. 2005)). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. Colonial Pipeline, 263 S.W.3d at 836. Further, courts must presume that our General Assembly was aware of its prior enactments and knew the state of the law at the time the legislation was passed. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

The MIR program was created in 2005 to "establish[] a resource to resolve disputes regarding the degree of permanent medical impairment ratings for injuries or occupational diseases to which the [Workers' Compensation Law] is applicable." Tenn. Comp. R. & Regs. 0800-02-20-.02(1) (2006). Tennessee Code Annotated section 50-6-204(d)(5) was designed to permit either the employee or the employer to request the appointment of an independent medical examiner from the MIR registry "[w]hen a dispute as to the degree of medical impairment exists." Tenn. Code Ann. § 50-6-204(d)(5); see also Tenn. Comp. R. & Regs. 0800-02-20-.02(2) ("The MIR Registry is available to any party with a dispute of the degree of medical impairment rating . . . ."). By the terms of the legislation, the parties may mutually agree upon the selection of an MIR physician from the registry or may engage in an established process of elimination to reach an agreement as to the selected physician. See Tenn. Code Ann. § 50-6-204(d)(5).

In the memorandum opinion issued pursuant to the initial appeal, we recognized that a dispute as to the degree of medical impairment did exist because "two (2) different physicians have issued differing permanent medical impairment ratings in compliance with the [Workers' Compensation Law] and the parties disagree as to those permanent impairment

ratings." Mansell, 2011 WL 3758562, at *4 (citing Tenn. Comp. R. & Regs. 0800-02-20-.01(5) (2006)). Once a dispute as to the degree of medical impairment exists, nothing in the MIR statute either limits its application to the DOL or extends its application to the trial court. Thus, in the absence of a plain directive as to the extent of the application of the MIR process, the broader statutory scheme, the history of the legislation, and other considerations may serve as interpretive guides. Estate of French v. Stratford House, 333 S.W.3d 546, 554 (Tenn. 2011) (citing Colonial Pipeline, 263 S.W.3d at 836).

By the enactment of the Workers' Compensation Reform Act of 2004, the General Assembly required employees and employers to submit to a Benefit Review Conference in the DOL before filing suit. See Tenn. Code Ann. § 50-6-203(a)(1) (2008) ("No claim for compensation under [the Workers' Compensation Law] shall be filed with a court . . . until the parties have exhausted the benefit review conference process . . . ."); id. § 50-6-225(a)(1) (2008 & Supp. 2012) ("[I]n case of a dispute over or failure to agree upon compensation under [the Workers' Compensation Law] . . . the parties shall first submit the dispute to the benefit review conference process . . . ."); id. § 50-6-239(b) (2008) ("The parties to a dispute shall attend and participate in a benefit review conference . . . as a condition precedent to filing a complaint with a court . . . ."); Chapman v. DaVita, Inc., 380 S.W.3d 710, 714 (Tenn. 2012) ("The use of the word 'shall' in sections 50-6-203(a) and 50-6-225(a)(1) clearly indicates the legislature's intention that exhaustion of the benefit review conference process is a mandatory prerequisite to filing a cause of action."). It is only when the parties cannot reach an agreement at the Benefit Review Conference that they may resort to the courts. Lynch v. City of Jellico, 205 S.W.3d 384, 391 (Tenn. 2006); West v. Vought Aircraft Indus., Inc., 256 S.W.3d 618, 622 (Tenn. 2008) ("[T]he Workers' Compensation Law now provides a definitive moment when a complaint can be filed—the moment the benefit review conference is concluded without a settlement.").

One year after the Workers' Compensation Reform Act of 2004, the General Assembly passed the legislation establishing the MIR process. Act of June 15, 2004, ch. 962, § 24, 2004 Tenn. Pub. Acts 2346, 2361 (codified at Tenn. Code Ann. § 50-6-204(d)(5) (2005)). As indicated, when interpreting statutory terms, courts must presume that the General Assembly, when making new law, was fully aware of its prior enactments. Owens, 908 S.W.2d at 926. Tennessee Code Annotated section 50-6-204(d)(5) and the related statutory provisions include broad language. The General Assembly could have easily included a provision requiring the appointment of an MIR physician prior to filing suit, similar to at least three provisions adopted in the Workers' Compensation Reform Act of 2004, all of which required a Benefit Review Conference as a condition precedent to the filing of suit. In the absence of such language restricting the MIR process to the DOL,

section 50-6-204(d)(5) should generally apply.[3]  We hold, therefore, that when a dispute as to the degree of medical impairment arises, whether in the DOL or in the trial court, either the employee or the employer may seek the opinion of an MIR physician pursuant to section 50-6-204(d)(5).

### B. Constitutionality of Section 50-6-204(d)(5) and the MIR Process

The Employee contends that section 50-6-204(d)(5), when applied to the proceedings in the trial court, is unconstitutional for two reasons: (1) the MIR statute violates the separation of powers doctrine, improperly infringing upon the trial court's authority to find the facts and to make evidentiary rulings on relevance, expert testimony, and witness credibility; and (2) the statute violates principles of due process because the presumption given to the MIR physician's opinion is "in most instances" irrebuttable, denying an employee of a meaningful opportunity to be heard on the issue of the medical impairment rating.

### 1. Separation of Powers

The Tennessee Constitution includes two explicit provisions establishing the separation of powers among the three branches of government.  Article II, section 1 provides, "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial."  Tenn. Const. art. II, § 1.  Article II, section 2 elaborates, "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."  Id. art. II, § 2.  While there are no precise lines of demarcation in the respective roles of our three branches of government, the traditional rule is that "the legislative [branch] [ha]s the authority to make, order, and repeal [the laws], the executive . . . to administer and enforce, and the judicial . . . to interpret and apply."  Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975) (quoting Richardson v. Young, 125 S.W. 664, 668 (Tenn. 1910)).  By the terms of our constitution, "[o]nly the Supreme Court has the inherent

---

[3] In the eight years since the MIR program was established, the presumption of accuracy given an MIR report has consistently been applied in the trial courts.  We have been unable to find any decision of this Court, or of any Special Workers' Compensation Appeals Panel, in which the MIR process was held to be limited to the administrative proceedings in the DOL.  Instead, trial courts have consistently accepted MIR reports, which have consistently been afforded a presumption of accuracy on the issue of medical impairment.  See, e.g., Bean v. Tepro, Inc., No. M2010-00264-WC-R3-WC, 2011 WL 686449, at *8 (Tenn. Workers' Comp. Panel Feb. 28, 2011) (modifying award of compensation to adopt impairment rating by MIR physician, which should have received a presumption of accuracy in the trial court); Tuten v. Johnson Controls, Inc., No. W2009-1426-SC-WCM-WC, 2010 WL 3363609, at *4 (Tenn. Workers' Comp. Panel Aug. 25, 2010) (rejecting employee's claim that trial court erred by adopting impairment rating of MIR physician); Transp. Serv., LLC v. Allen, No. E2009-01268-WC-R3-WC, 2010 WL 2943147, at *8 (Tenn. Workers' Comp. Panel July 26, 2010) (same).

power to promulgate rules governing the practice and procedure of the courts of this state, and this inherent power 'exists by virtue of the [Constitution's] establishment of a Court and not by largess of the legislature.'" State v. Mallard, 40 S.W.3d 473, 480-81 (Tenn. 2001) (citations omitted) (quoting Haynes v. McKenzie Mem'l Hosp., 667 S.W.2d 497, 498 (Tenn. Ct. App. 1984)). In this context, this "[C]ourt is supreme in fact as well as in name." Barger v. Brock, 535 S.W.2d 337, 341 (Tenn. 1976).

Based upon these principles, but taking into account considerations of comity among the three branches of government, this Court has exercised measured restraint by repeatedly holding that "[a] legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government." Lynch, 205 S.W.3d at 393 (alteration in original) (quoting Underwood, 529 S.W.2d at 47). "It is only by remembering the limits of the power confided to the judicial department of the government, and respecting the independence of the other departments, that the judiciary can maintain its own independence in the proper sense of the term[.]" State ex rel. Robinson v. Lindsay, 53 S.W. 950, 952 (Tenn. 1899).

In State v. Mallard, 40 S.W.3d at 475, this Court considered the propriety of legislation that touched upon the constitutional powers reserved exclusively for the judicial branch. The General Assembly enacted Tennessee Code Annotated section 39-17-424 (1997), which set forth several factors for courts to consider "in addition to all other logically relevant factors" in "determining whether a particular object is drug paraphernalia as defined by [Tennessee Code Annotated section] 39-17-402." One of the enumerated factors—"[p]rior convictions, if any, of the owner or of anyone in control of the object for violation of any state or federal law relating to controlled substances"—conflicted with Tennessee Rule of Evidence 404(b), which generally precludes the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity with the character trait." See Mallard, 40 S.W.3d at 479-80. When the constitutionality of the statute was challenged as an intrusion upon the powers of the judiciary, Justice William M. Barker, writing for a unanimous Court, observed that the judicial branch will consent to rules of procedure or evidence that are promulgated by the legislature only when they "(1) are reasonable and workable within the framework [of] the judiciary, and (2) work to supplement the rules already promulgated by the Supreme Court." Id. at 481. He emphasized, however, that the Court will do so "purely out of considerations of inter-branch comity," explaining that the Court "is not required [to do so] by any principle of free government." Id. at 482. "To hold otherwise," the Court ruled, "would be to irreparably damage the division of governmental power so essential to the proper maintenance of our constitutional republic." Id. Indeed, any legislation designed as a rule of evidence "must inevitably yield when it seeks to govern the practice and procedure of the courts." Id. at 480.

As to the provision at issue in <u>Mallard</u>, this Court further explained the limitations on the role of the legislature:

> [T]he legislature can have no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power. Among these inherent judicial powers are the powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved. As an essential corollary to these principles, any determination of what evidence is <u>relevant</u>, either logically or legally, to a fact at issue in litigation is a power that is entrusted solely to the care and exercise of the judiciary. Indeed, a "court's constitutional function to independently decide controversies is impaired if it must depend on, or is limited by, another branch of government in determining and evaluating the facts of the controversies it must adjudicate." Consequently, any legislative enactment that purports to remove the discretion of a trial judge in making determinations of logical or legal relevancy impairs the independent operation of the judicial branch of government, and no such measure can be permitted to stand.

<u>Id.</u> at 483 (citations omitted) (quoting <u>Opinion of the Justices</u>, 688 A.2d 1006, 1016 (N.H. 1997)). Ultimately, this Court, respectful of the presumptive constitutionality of all legislative acts, chose to interpret the statute as merely supplemental, holding that its terms applied so long as the "proffered evidence otherwise me[t] all the requirements for admissibility under the Rules of Evidence." <u>Id.</u> at 484.[4]

Shortly after the decision in <u>Mallard</u>, this Court considered a similar challenge in the workers' compensation context. In <u>Martin v. Lear Corp.</u>, 90 S.W.3d 626 (Tenn. 2002), an employee sought to introduce the testimony of a physician who had examined him at the request and expense of his employer, citing as support Tennessee Code Annotated section 50-6-204(f) (1999), which provided that any examining physician whose services are paid for by the employer may be required to testify. <u>Id.</u> at 630. In response, the employer argued that the workers' compensation provision violated the separation of powers provisions, as interpreted in <u>Mallard</u>, because it impermissibly conflicted with Tennessee Rule of Civil Procedure 26.02(4)(B), which protects from discovery the opinion of an expert employed as a consultant rather than a witness for trial. <u>Id.</u> at 630-31. Distinguishing <u>Mallard</u>, the Court upheld section 50-6-204(f) and ruled that the physician's testimony was admissible for two

---

[4] Undertaking its duty to construe legislative enactments as constitutional where possible, the Court upheld Tennessee Code Annotated section 39-17-424, concluding that the statute only suggested, rather than required, trial courts to consider certain factors as relevant, and thus supplemented, rather than impaired, the Rules of Evidence. <u>Id.</u> at 483-84.

-10-

primary reasons: first, because section 50-6-204(f) did not "impermissibly conflict with Rule 26.02," but merely limited its application in certain circumstances—i.e., when an employer chooses to designate an examining physician as a consulting expert, and, second, and perhaps more importantly, because "the Workers' Compensation Law is entirely a creature of statute[,] . . . [and] the Legislature is the appropriate body to set the policy that governs workers' compensation cases." Id. at 631-32 (citations omitted).

Our deference to the General Assembly in the workers' compensation context dates back to the enactment of the Workmen's Compensation Act in 1919. From the decision in Scott v. Nashville Bridge Co., 223 S.W. 844, 848, 854 (Tenn. 1920), in which this Court upheld the constitutionality of the vast majority of the original act and reaffirmed the legislature's authority to abolish common law defenses and establish compensation to injured workers,[5] to our ruling in Lynch v. City of Jellico, 205 S.W.3d at 393, in which we held that the "benefit review process [described in the Workers' Compensation Reform Act of 2004] does not frustrate the adjudicative function of the judicial branch," this Court has consistently rejected challenges to the workers' compensation scheme based upon the separation of powers provisions of the Tennessee Constitution.

In this instance, the Employee makes arguments similar to those advanced in Martin, contending that the statute creating the MIR process is unconstitutional because it conflicts with Tennessee Rules of Evidence 702 and 706, which govern the appointment of experts and the admissibility of their testimony. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 706 describes the general circumstances under which a trial court may qualify and appoint an expert witness of its own selection. See Tenn. R. Evid. 706. The MIR process, in contrast, requires the Commissioner of the DOL, rather than the trial court, to establish the qualifications for MIR physicians whose impairment ratings are afforded the statutory presumption of accuracy. Tenn. Code Ann. § 50-6-204(d)(6). Moreover, when a dispute as to injury exists, the trial court is prohibited by the MIR statutes from appointing its own neutral physician to state an opinion as to the degree of medical impairment. Id. § 50-6-204(d)(9).

---

[5] The analysis by the Court in Scott has been criticized for unnecessarily narrowing the scope of article I, section 17 of the Tennessee Constitution. See William C. Koch, Jr., Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article I, Section 17 of the Tennessee Constitution, 27 U. Mem. L. Rev. 333, 411-12 & n.493 (1997). The result of the decision, however, would have been the same had the Court properly "concluded that the [Workmen's Compensation] Act's administrative remedies were adequate substitutes for the common-law remedies available to injured workers prior to the passage of the Act." Id. at 412.

In our view, these MIR statutes, while placing limitations on the ability of a trial court to determine the admissibility of expert testimony and to appoint its own expert witness to give an impairment rating, are not in conflict with the Rules of Evidence. Initially, we see no reason why a physician who is qualified to be on the MIR registry could not provide an expert opinion that likewise meets the admissibility requirements of Tennessee Rule of Evidence 702. The DOL requires MIR physicians to

> (a) Possess a license to practice medicine or osteopathy in Tennessee which is current, active, and unrestricted;
> (b) Be board-certified in his/her medical specialty by a board recognized by the American Board of Medical Specialties, the American Osteopathic Association or another organization acceptable to the Commissioner;
> (c) Have successfully completed a training course, approved by the Commissioner, dedicated to the proper application of the applicable edition of the American Medical Association Guides to the Evaluation of Permanent Impairment . . . in impairment evaluations and furnish satisfactory evidence thereof; and
> (d) Furnish satisfactory proof of carrying the minimum medical malpractice insurance coverage.

Tenn. Comp. R. & Regs. 0800-02-20-.04(1) (2006). MIR physicians are also subject to peer review to ensure that proper procedures are followed, Tenn. Comp. R. & Regs. 0800-02-20-.12(1) (2006), and an MIR physician's failure to properly apply the AMA Guides in determining an impairment rating may result in permanent or temporary removal from the MIR Registry, Tenn. Comp. R. & Regs. 0800-02-20-.13(1)(c) (2006). By comparison, trial courts determining whether an expert is qualified to testify pursuant to Rule 702 may consider

> (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 265 (Tenn. 1997). To the extent the McDaniel factors are not already implicated by the DOL regulations, a trial court is always free to consider those factors when evaluating an MIR report to determine if the presumption

-12-

of accuracy is overcome by clear and convincing evidence.[6]  Moreover, the parties are permitted to depose the MIR physician in any case where an MIR report is submitted, which provides an employee, an employer, and the trial court with ample opportunity to cross-examine or otherwise question the MIR physician as to his or her medical qualifications, training, expertise, methodology, and the like.

A second limitation imposed by the MIR statutes is that a trial court may not appoint its own expert witnesses under Tennessee Rule of Evidence 706 to assist in the establishment of the degree of medical impairment.  See Tenn. Code Ann. § 50-6-204(d)(9).  On all other issues that may arise within the MIR process, however, "the court may, . . . on its own motion, appoint a neutral physician of good standing and ability to make an examination of the injured person and report the physician's findings to the court."  Id.  In our assessment, this statutory limitation, which is specifically tailored to expedite resolution of the degree of medical impairment, bears little difference from the statutory provision at issue in Martin. See Martin, 90 S.W.3d at 631-32 (holding that specific workers' compensation statute allowing admission of certain expert testimony did not violate separation of powers because it merely limited the application of a more general procedural rule intended to exclude such testimony).  In workers' compensation cases, the general provisions of the Tennessee Rules of Evidence and the Tennessee Rules of Civil Procedure may, under some circumstances, be subject to the more specific provisions of the Workers' Compensation Law.  Id. at 630; see also Mallard, 40 S.W.3d at 485 (acknowledging that a "specific piece of evidence admitted in a specific context for a specific purpose" may prevail over the Tennessee Rules of Evidence).  Tennessee Code Annotated section 50-6-204(d)(9) allows the trial court to call its own expert witnesses on all issues that may arise within the MIR process, except for the sole purpose of obtaining yet another impairment rating.  In consequence, this specific provision within the MIR statutes prevails over the general evidentiary rule in this instance.

In summary, because the MIR statutes are specifically tailored to certain, limited circumstances within the overall workers' compensation scheme, we cannot conclude that the MIR process "strike[s] at the heart of the court's exercise of judicial power."  Martin, 90 S.W.3d at 631 (citing Mallard, 40 S.W.3d at 483).  As held in Martin, "the statute at issue . . . does not impermissibly conflict with [Tennessee Rules of Evidence 702 or 706] because it merely limits the application of [the Rules] in certain circumstances."  Id.  Moreover, insofar as the Employee's arguments relate to the weight to be given an MIR physician's

---

[6] Overcoming the statutory presumption of accuracy is a matter of the weight, rather than the admissibility, of the MIR report.  Nevertheless, the ability of the trial court to apply the traditional McDaniel factors in this context, as conceded by the Attorney General, demonstrates why the MIR process does not dictate the ultimate judicial determination of the court, even if the court's preliminary "gatekeeper" function is somewhat restricted.

-13-

impairment rating, the statutory presumption in section 50-6-204(d)(5) applies only to the opinion of an MIR physician as to the degree of medical impairment, Courier Printing Co. v. Sims ex rel. Bly, No. M2010-01279-WC-R3-WC, 2011 WL 2936350, at *6 (Tenn. Workers' Comp. Panel July 15, 2011) ("Opinions stated by [an MIR] physician on matters other than the degree of impairment do not carry the presumption of correctness afforded by the statute to the impairment rating."), and nothing prevents trial courts from admitting, considering, and weighing all relevant evidence that may be submitted by the employee or the employer in any effort to rebut the statutory presumption, see Smith v. Nestle Waters N. Am., Inc., No. M2011-00908-WC-R3-WC, 2012 WL 3628779, at *3 (Tenn. Workers' Comp. Panel Aug. 23, 2012) (holding that trial court properly admitted opinion of physician on issues other than impairment rating because the evidence was relevant and competent proof of the employee's injury); see also Courier Printing, 2011 WL 2936350, at *6 (holding that evidence as to causation of injury was admissible as relevant under the Tennessee Rules of Evidence, even if somewhat inconsistent with the statutory and regulatory scheme of the MIR process).

**2. Due Process**

The Employee also challenges the constitutionality of section 50-6-204(d)(5) based upon the Due Process Clauses contained in the Fifth and Fourteenth Amendments to the United States Constitution, and the "law of the land" clause contained in article I, section 8 of the Tennessee Constitution. The Fifth and Fourteenth Amendments prohibit the federal and state governments from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V; id. amend. XIV, § 1. Article I, section 8 of the Tennessee Constitution provides "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8. "The phrase, 'the law of the land,' used in this section of our State Constitution, and the phrase, 'due process of law,' used in the [Fifth and Fourteenth Amendments to the United States Constitution], are synonymous phrases meaning one and the same thing." State v. Hale, 840 S.W.2d 307, 312 (Tenn. 1992) (citing Dearborne v. State, 575 S.W.2d 259 (Tenn. 1978)). In consequence, while this Court is the final arbiter of the Tennessee Constitution and is always free to expand the minimum level of protection mandated by the federal constitution, Burford v. State, 845 S.W.2d 204, 207 (Tenn. 1992) (citing Doe v. Norris, 751 S.W.2d 834, 838 (Tenn. 1988)), article I, section 8 has consistently been interpreted as conferring identical due process protections as its federal counterparts, id. (citing Daugherty v. State, 393 S.W.2d 739 (Tenn. 1965)). Under both the state and federal constitutions, due process encompasses procedural and substantive protections. See

Lynch, 205 S.W.3d at 391.[7]

### a. Procedural Due Process

"The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." Lynch, 205 S.W.3d at 391; see also Heyne, 380 S.W.3d at 732 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976))). In determining whether this requirement has been met, we must consider three factors established by the United States Supreme Court:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Heyne, 380 S.W.3d at 732 (quoting Mathews, 424 U.S. at 335). Within this framework, we are mindful that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

In this instance, we must determine whether the MIR process established in Tennessee Code Annotated section 50-6-204(d)(5) deprives employees seeking workers' compensation benefits of the opportunity to have their claims heard at a meaningful time and in a meaningful manner. The private interest at stake is, of course, the right of a worker who is injured on the job to recover workers' compensation benefits. The state's interest in our workers' compensation system generally, and the MIR process more specifically, is to maintain a comprehensive, cost-efficient, and expedient process for reviewing the claims of injured workers. See Williams, 328 S.W.3d at 502 ("[T]he General Assembly's purpose [in creating the MIR process] was to provide an efficient method for presenting neutral, objective opinions regarding an employee's impairment to aid trial courts when the parties disagree regarding the extent of the impairment."). The procedural due process issue is,

---

[7] Because the Workers' Compensation Law is civil in nature, the application of Tennessee Code Annotated section 50-6-204(d)(5) does not trigger the constitutional safeguards that accompany criminal proceedings. See Waters v. Farr, 291 S.W.3d 873, 902 (Tenn. 2009); see also Heyne v. Metro. Nashville Bd. of Public Educ., 380 S.W.3d 715, 735 (Tenn. 2012) ("Due process does not require all the structural safeguards in administrative and civil adjudicatory proceedings that we have come to expect in criminal proceedings.").

therefore, whether injured workers are at risk of being deprived of their entitlement to workers' compensation benefits because the MIR statute essentially fixes the medical impairment rating and precludes trial courts from properly evaluating other medical evidence.

As stated, we have previously upheld the constitutionality of our workers' compensation system against similar attacks. See, e.g., Lynch, 205 S.W.3d at 392 (holding that the mandatory benefit review conference requirement does not deprive injured workers of their right to be heard because they may file suit and have their rights judicially determined upon exhausting the benefit review process). The Employee contends, however, that once a litigant has completed the Benefit Review Conference and files suit, section 50-6-204(d)(5) violates procedural due process by giving an MIR physician "in most instances an irrebuttable or conclusive presumption" of accuracy, thereby preventing a meaningful opportunity to be heard specifically on the issue of medical impairment. The Employee submits that the presumption is irrebuttable in practice because the evidentiary burden of clear and convincing evidence can never be overcome, and, in consequence, effectively denies the opportunity for employees to present competent expert proof that might otherwise be considered, weighed, and determined by the courts. He further contends that even though either of the parties is permitted to introduce other proof contradictory to the impairment rating by the MIR physician, this is not a "meaningful opportunity to be heard" because the trial court, as a practical matter, will only consider the presumptively accurate opinion.

Initially, the Employee has conceded, as he must, that the presumption created in section 50-6-204(d)(5) is not absolute, and, by its own terms, is rebuttable by clear and convincing evidence. See Tenn. Code Ann. § 50-6-204(d)(5) ("The written opinion as to the permanent impairment rating given by the independent medical examiner pursuant to this subdivision (d)(5) shall be presumed to be the accurate impairment rating; provided, however, that this presumption may be rebutted by clear and convincing evidence to the contrary." (emphasis added)). In at least three recent rulings by our Special Workers' Compensation Appeals Panels the employee has successfully rebutted the presumption of accuracy of an MIR impairment rating by the presentation of clear and convincing evidence to the contrary. See Smith v. Elec. Research & Mfg. Coop., Inc., No. W2012-006560-WC-R3-WC, 2013 WL 683192, at *5 (Tenn. Workers' Comp. Panel Feb. 22, 2013); Amado v. Bridgestone Firestone Ams. Tire Operations, LLC, No. M2012-00094-WC-R3-WC, 2013 WL 359760, at *4 (Tenn. Workers' Comp. Panel Jan. 30, 2013); Brooks v. Corr. Med. Servs., No. W2010-00266-WC-R3-WC, 2011 WL 684600, at *5 (Tenn. Workers' Comp. Panel Feb. 25, 2011). These rulings contradict the Employee's claim that the statutory presumption is, in effect, not subject to rebuttal.[8] We conclude,

_____

[8] In the only two published decisions addressing the MIR process, the statutory presumption was not

(continued...)

-16-

therefore, that the presumption created by section 50-6-204(d)(5) is not a "permanent irrebutable presumption" that contravenes the procedural due process rights of employees.

### b. Substantive Due Process

In contrast to procedural due process, substantive due process bars oppressive government action regardless of the fairness of the procedures used to implement the action. Lynch, 205 S.W.3d at 391-92. Substantive due process claims are divided into two categories: (1) deprivations of a fundamental constitutional guarantee, and (2) government actions that are "arbitrary, or conscience shocking, in a constitutional sense." Id. at 392 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)). "Appropriate limits on substantive due process come not from drawing arbitrary lines but rather from careful 'respect for the teachings of history [and] solid recognition of the basic values that underlie our society.'" Moore v. City of E. Cleveland, Ohio, 431 U.S. 494, 503 (1977) (quoting Griswold v. Connecticut, 381 U.S. 479, 501 (1965) (Harlan, J., concurring)). While workers' compensation benefits, as property rights, are protected by article I, section 8 of the Tennessee Constitution, they are not fundamental rights "implicit in the concept of ordered liberty." See Vogel v. Wells Fargo Guard Servs., 937 S.W.2d 856, 858 (Tenn. 1996); see also Lynch, 205 S.W.3d at 392 ("While it is certainly important to ensure that workers obtain redress for industrial accidents, the workers' compensation scheme does not stand on the same footing as those fundamental rights identified by state and federal courts [as] 'implicit in the concept of ordered liberty' so as to raise substantive due process concerns."). In consequence, our analysis addresses whether the statutory presumption created by Tennessee Code Annotated section 50-6-204(d)(5) is "arbitrary, or conscience shocking, in a constitutional sense." Section 50-6-204(d)(5) "comports with substantive due process if it bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" Gallaher v. Elam, 104 S.W.3d 455, 463 (Tenn. 2003) (quoting Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997)).

By the adoption of the MIR process, the General Assembly sought to establish "a resource to resolve disputes regarding the degree of permanent medical impairment ratings

---

[8](...continued)
even applied by the trial court because the MIR report was found to be inadmissible altogether. See Lazar v. J.W. Aluminum, 346 S.W.3d 438, 443 (Tenn. 2011) (holding that the trial court properly declined to consider an MIR report that was obtained as a means of seeking reconsideration of an original settlement because "[w]hen an award is subject to reconsideration, the trial court is bound by the medical impairment rating that was the basis of the original award or settlement." (citing Tenn. Code Ann. § 50-6-241(d)(1)(B)(iv))); Williams, 328 S.W.3d at 502-03 (holding that even though "properly prepared and certified MIR reports should not be excluded as hearsay," the trial court did not abuse its discretion by ruling that the MIR report was inadmissible as untimely because of it having been made available only a few days before trial, which denied the employee a reasonable opportunity to gather rebuttal evidence).

for injuries or occupational diseases to which the [Workers' Compensation Law] is applicable." Tenn. Comp. R. & Regs. 0800-02-20-.02(1). Just as the Workers' Compensation Law is remedial in nature, so is the MIR process as a component part. See Trosper v. Armstrong Wood Prods., Inc., 273 S.W.3d 598, 609 n.5 (Tenn. 2008) (recognizing that Tennessee Code Annotated section 50-6-116 "declares the Workers' Compensation statute to be remedial in nature, and directs that the statute 'shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained'" (quoting Tenn. Code Ann. § 50-6-116 (2008))). The legislative design has been to compensate injured workers as quickly and efficiently as possible. See Nichols, 318 S.W.3d at 360 ("Because of their remedial nature, this Court has traditionally construed workers' compensation statutes in a liberal manner in order to promote and adhere to the [Workers' Compensation Law's] purposes of securing benefits to those workers who fall within its coverage." (citation and internal quotation marks omitted)).

We have consistently recognized the prerogative of the legislature to establish the policies and procedures necessary to administer workers' compensation claims. Martin, 90 S.W.3d at 631-32. Like the establishment of the Benefit Review Conference in 2004, the creation of the MIR process in 2005, designed to minimize costs and expedite the resolution of claims by injured workers, does not qualify as "an 'arbitrary, or conscience shocking' exercise of the legislature's authority." Lynch, 205 S.W.3d at 392 (citing Collins, 503 U.S. at 128). Instead, the legislature "has merely provided an alternative procedure in a limited and specific context—workers' compensation cases" in which the employee and the employer disagree as to the appropriate medical impairment rating. Martin, 90 S.W.3d at 632. In consequence, the MIR program established in section 50-6-204(d)(5) does not violate the principles of substantive due process.

### C. Application of Section 50-6-204(d)(5)

Having determined that the statutory presumption created by section 50-6-204(d)(5) is not limited to use by the DOL and that the terms do not violate constitutional principles, we now turn to the application of the presumption to the evidence in this record. The trial court determined that the presumption was overcome by clear and convincing evidence and, therefore, rejected the 7% rating by Dr. Weisman, the MIR physician, in favor of the 10% rating by Dr. Landsberg, the Employee's independent medical examiner. The Employer contends that the trial court erred by relying upon the medical qualifications of the physicians. Although we presume that the trial court's findings of fact are correct, unless the evidence preponderates otherwise, Jones v. Garrett, 92 S.W.3d 835, 838 (Tenn. 2002), whether the facts establish clear and convincing evidence to overcome the statutory presumption of accuracy of an MIR report is a question of law that we must review de novo with no presumption of correctness, see Reid ex rel. Martiniano v. State, 396 S.W.3d 478, 515 (Tenn. 2013) (citing In re Bernard T., 319 S.W.3d 586, 596-97 (Tenn. 2010)).

While a comparison of the differing medical specialties of an MIR physician and other testifying physicians "is certainly an appropriate [factor] to consider in evaluating conflicting expert medical evidence, it is not sufficient alone to rebut the presumption created by section 50-6-204(d)(5)." Claiborne v. ABC Grp. Fuel Sys., Inc., No. M2008-02292-WC-R3-WC, 2009 WL 4017167, at *5 (Tenn. Workers' Comp. Panel Nov. 20, 2009). Furthermore, "[s]imply because one or more evaluating physicians disagree with a properly founded MIR evaluation does not permit a finding that proof to the contrary has been established." Beeler v. Lennox Hearth Prods., Inc., No. W2007-02441-SC-WCM-WC, 2009 WL 396121, at *4 (Tenn. Workers' Comp. Panel Feb. 18, 2009). "A disagreement between medical expert witnesses as to the proper diagnosis of an employee's condition may not, in and of itself, constitute the clear and convincing evidence needed to overcome the statutory presumption of accuracy afforded an MIR physician's impairment rating." Smith, 2013 WL 683192, at *4.

This Court has described "clear and convincing evidence" as that "in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992). In the specific context of the statute at issue, the clear and convincing evidence standard has been interpreted to mean that "if no evidence has been admitted which raises a 'serious and substantial doubt' about the evaluation's correctness, the MIR evaluation is the accurate impairment rating." Beeler, 2009 WL 396121, at *4. Another Special Workers' Compensation Appeals Panel has also observed that "[a] straightforward interpretation of [the clear and convincing evidence] standard favors, or even requires, the presentation of affirmative evidence that an MIR physician had used an incorrect method or an inappropriate interpretation of the AMA Guides to overcome the statutory presumption." Tuten, 2010 WL 3363609, at *4 (emphasis added).

Since the Panel's decision in Tuten, other Panels have retreated from such a narrow interpretation of the clear and convincing evidence standard. For example, a Panel has "observed that the presumption found in section 50-6-204(d)(5) may be rebutted by affirmative evidence that an MIR physician 'used an incorrect method or an inappropriate interpretation' of the AMA Guides." Smith, 2013 WL 683192, at *3 (emphasis added) (quoting Tuten, 2010 WL 3363609, at *4). Another held that "[p]roof that an MIR physician used an incorrect method or an inappropriate interpretation of the AMA Guides can be used to overcome the statutory presumption." Bean, 2011 WL 686449, at *7 (emphasis added) (citing Tuten, 2010 WL 3363609, at *4). Yet another Panel cited Tuten for its statement of "what may be required to rebut[] the presumption found in [section] 50-6-204(d)(5)." Brooks, 2011 WL 684600, at *3 (emphasis added). In any event, "[w]hen deciding whether or not an employee has rebutted the statutory presumption of correctness enjoyed by an MIR

physician'[s] impairment rating, <u>the focus is on the evidence offered to rebut that physician's rating</u>." <u>Id.</u> at *5 (emphasis added); <u>see also</u> <u>Smith</u>, 2013 WL 683192, at *4.

In this instance, the Employee did not present any proof that specifically rebutted the 7% rating by Dr. Weisman. On remand, the Employee submitted to an MIR evaluation and the content of the MIR report was stipulated as evidence. Although the Employee also submitted the deposition of Mr. Blaisdell, the Program Coordinator of the MIR program in the DOL, his testimony did not address the issue of medical impairment. In fact, at the hearing on remand, counsel for the Employee relied solely upon the constitutional argument, conceding that there was no clear and convincing evidence to overcome the statutory presumption. Although counsel retracted the concession during oral argument before this Court, the record confirms that the Employee made no attempt to produce testimony clearly and convincingly rebutting the contents of the MIR report.

The Employee did, as indicated, offer the deposition testimony of Mr. Blaisdell, which related primarily to the general administration of the MIR process, including the relevant chain of command in the DOL, the procedures for qualifying physicians to be listed on the MIR registry, and the standards applied on peer review of an MIR report. While only one-and-one-half pages of his seventy-six-page deposition transcript relate to the MIR report submitted by Dr. Weisman, Mr. Blaisdell did testify that he had discovered that Dr. Weisman had initially submitted an outdated reporting form, that he had notified Dr. Weisman of the error, and that he had asked him to re-contact the Employee and use the current form in order to accurately complete his final report. According to Mr. Blaisdell, Dr. Weisman telephoned the Employee with additional questions, completed the current form, and submitted a proper MIR report. When asked how an employee could rebut the presumption of accuracy of an MIR report, Mr. Blaisdell responded that the clear and convincing evidence standard was defined in case law, and that it would be left to the discretion of the trial court to determine whether that standard had been met.

Three decisions by Special Workers' Compensation Appeals Panels illustrate the differences between the evidence submitted in this instance and what has previously qualified as evidence so clear and convincing as to rebut the statutory presumption afforded an MIR report. In <u>Brooks v. Correctional Medical Services</u>, the trial court found that the "observations of Employee, Employee's testimony, the medical proof, and the testimony of the physician who had treated [E]mployee for a number of years" had overcome the statutory presumption. 2011 WL 684600, at *5. The Panel affirmed, holding that "the focus is on the evidence offered to rebut [the MIR] physician's rating," which included, "[p]erhaps most importantly," testimony by the treating physician as to errors in the evaluation conducted by the MIR physician. <u>Id.</u> In <u>Amado v. Bridgestone Firestone Americas Tire Operations, LLC</u>, the trial court found that the statutory presumption had been overcome by clear and

convincing evidence because an independent medical examiner testified at trial that he had reviewed the MIR report and determined that the MIR physician had used an incorrect method in reaching the impairment rating. 2013 WL 359760, at *2. The Panel affirmed, finding that the evidence did not preponderate against the conclusion of the trial court because the employer had failed to present any evidence to contradict the testimony of the independent medical examiner. Id. at *4. Finally, in Smith v. Electric Research & Manufacturing Cooperative, Inc., the Panel affirmed the trial court's finding that the presumption had been overcome by lay and expert testimony, which included testimony by an examining physician who stated that the MIR physician had erred in his evaluation of the employee. 2013 WL 683192, at *4-5.

In this instance, the deposition testimony of Mr. Blaisdell does not overcome the presumption of accuracy of Dr. Weisman's 7% impairment rating. While the trial court properly reviewed the entire record in reaching its conclusion, nothing called into question the accuracy of the MIR report. Counsel for the Employee conceded as much during the hearing on remand. Absent any other evidence to question the accuracy of the MIR report, the fact that Dr. Landsberg—whose deposition was taken two years prior to Dr. Weisman's evaluation of the Employee—assigned a different impairment rating under the AMA Guides is not sufficient to overcome the statutory presumption. See Smith, 2013 WL 683192, at *4; Beeler, 2009 WL 396121, at *4. Further, the trial court adopted the higher impairment rating of 10% by Dr. Landsberg based in large measure on differences in the respective medical qualifications of Dr. Landsberg and Dr. Weisman. Although differences in medical qualifications, standing alone, are typically insufficient to overcome the statutory presumption, see Claiborne, 2009 WL 4017167, at *5, the trial court erroneously accredited Dr. Landsberg as a member of a "disability rating physicians board academy" and found this "unique qualification" sufficient to overcome the presumption. To the contrary, the record demonstrates that Dr. Weisman, not Dr. Landsberg, was a member of the American Board of Independent Medical Examiners.

Under these circumstances, the evidence preponderates against the trial court's factual findings as to the medical qualifications of the physicians, and the presumption of accuracy has not been otherwise overcome by clear and convincing evidence. While we acknowledge that an employee may be able to overcome the presumption even without "affirmative evidence that an MIR physician had used an incorrect method or an inappropriate interpretation of the AMA Guides," Tuten, 2010 WL 3363609, at *4, in this instance, the Employee has been unable to produce evidence of rebuttal.[9] That Dr. Weisman had initially

---

[9] For example, in Goodwin v. United Parcel Service, Inc., No. M2010-01134-WC-R3-WC, 2011 WL 1434581, at *3 (Tenn. Workers' Comp. Panel Apr. 14, 2011), the presumption was rebutted through

(continued...)

used an outdated form in the submission of his MIR report is not enough to discredit the content of his revised report using the proper form. We must conclude, therefore, that the evidence was not so clear and convincing as to overcome the statutory presumption of accuracy of Dr. Weisman's report.

### IV. Conclusion

Tennessee Code Annotated section 50-6-204(d)(5) is compliant with constitutional standards. The presumption of accuracy afforded an independent medical examiner who is appointed under the MIR program does not violate the separation of powers doctrine and meets the procedural and substantive standards of due process. We must conclude that although the Employee is entitled to an award of disability, the evidence preponderates against the trial court's alternative finding that the presumption was overcome by clear and convincing evidence. The judgment is affirmed, as modified, in that the Employee is awarded benefits based upon the 7% impairment rating by the MIR physician rather than the 10% rating. The cause is remanded to the trial court to modify the award of permanent partial disability benefits to one-and-one-half times the 7% rating, and for any further proceedings necessary. Costs of this appeal are taxed to William H. Mansell and his surety, for which execution may issue if necessary.

_____

GARY R. WADE, CHIEF JUSTICE

---

[9](...continued)
testimony that although the MIR physician had performed his examination correctly, he had incorrectly calculated the resulting impairment rating either by making an error in arithmetic or by misreading the AMA Guides. The presumption might also be rebutted by proof that an MIR physician was not properly qualified for inclusion on the MIR registry, had been removed from the MIR registry subsequent to providing his or her report, or was not qualified to testify as an expert. See, e.g., Nielsen Bainbridge, LLC v. Shinn, No. M2008-01639-WC-R3-WC, 2010 WL 153041, at *2, *5 (Tenn. Workers' Comp. Panel Jan. 15, 2010) (finding that removal of physician from MIR registry due to misrepresentations in the MIR application process weighed against physician's credibility); Walker v. Saturn Corp., No. M2007-01506-WC-R3-WC, 2008 WL 4072075, at *9 (Tenn. Workers' Comp. Panel Sept. 2, 2008) (allowing director of MIR program to testify regarding former MIR physician's qualifications to testify as an expert witness). Indeed, there may be other circumstances that would qualify as clear and convincing evidence to rebut the statutory presumption of accuracy given an MIR report. In this instance, however, no such circumstances were presented in the trial court.