**FILED**
**Dec 28, 2018**
**10:08 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT NASHVILLE**

| | | |
|---|---|---|
| **LARRY MALONE,** | ) | **Docket No. 2017-06-1996** |
| **Employee,** | ) | |
| **v.** | ) | |
| **URS ENERGY & CONSTRUCTION,** | ) | **State File No. 43349-2016** |
| | ) | |
| **Employer,** | ) | |
| | ) | **Judge Joshua Davis Baker** |
| **AMERICAN ZURICH INS. CO.,** | ) | |
| **Carrier.** | ) | |
| | ) | |

**COMPENSATION HEARING ORDER**

The Court convened a compensation hearing on November 29, 2018. The only issue is the extent of permanent partial disability (PPD) sustained by Mr. Malone as a result of the left-knee injury he suffered while working for URS. For the reasons below, the Court holds Mr. Malone established by a preponderance of the evidence that he is entitled to PPD benefits commensurate with an injury of seven percent to the body as a whole.

**History of Claim**

URS accepted Mr. Malone's knee claim, provided all medical treatment, and paid him temporary total disability benefits at a stipulated compensation rate of $492.05. Because it accepted the claim and provided benefits, the dispute here concerned only the amount of PPD benefits owed to Mr. Malone.

The dispute over PPD benefits arose because Mr. Malone previously had a knee replacement to same knee before the work accident. Dr. Roy Terry performed Mr. Malone's first knee-replacement and noted he had "excellent" range of motion. After that surgery, he returned to his previous work as a laborer for URS and testified he had little pain in his knee. Following the second surgery, his condition changed considerably.

Dr. Damon Petty performed the second knee replacement surgery, and Mr. Malone began having problems shortly thereafter. Although he returned to work at URS, Mr. Malone testified his knee prevented him from performing many tasks he did as a laborer. He complained of daily knee pain that interrupted his sleep and, while he could still climb stairs with significant pain, he could no longer climb ladders.

During office visits after the surgery, Dr. Petty's examination revealed the knee was stable despite some muscle atrophy. However, the examination also showed flexion from 0-95 degrees at the time of maximum medical improvement (MMI). Dr. Petty admitted this range of motion (ROM) fell below the normal ROM for a non-artificial knee but deemed it appropriate for an artificial knee.

Despite these difficulties with work and less than normal ROM, Dr. Petty found Mr. Malone suffered no additional impairment as a result of the second surgery. Dr. Petty noted the first knee replacement would have resulted in a twenty-five percent rating to the lower extremity, which is a class two rating under the Sixth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (*AMA Guides*). Due to the second surgery, Dr. Petty determined Mr. Malone sustained a twenty-five percent rating to the lower extremity. Because Mr. Malone's impairment rating remained the same, Dr. Petty gave a rating of zero.

Despite assigning no additional impairment, Dr. Petty placed new restrictions on Mr. Malone's work activities including no lifting more than fifty pounds. This exceeded the restrictions imposed by Dr. Terry after the after the first surgery, who only advised Mr. Malone against climbing at work.

Dr. David West examined Mr. Malone at his attorney's request and concluded he suffered additional impairment following the second surgery. Dr. West placed him in class three of the AMA Guides and, considering the modifiers, assigned an impairment rating of forty-three percent to the lower extremity. Dr. West formed the opinion in part by considering Mr. Malone's subjective complaints of pain. To Dr. West, the reduced ROM, difficulty climbing stairs, and muscle atrophy required placement in class three. By deducting the twenty-five percent impairment for the first surgery, Dr. West assigned Mr. Malone with an eighteen percent rating to the lower extremity, which equated to seven percent to the body as a whole.

**Findings of Fact and Conclusions of Law**

Mr. Malone must prove all elements of his case by a preponderance of the evidence, including the amount of his PPD. Tenn. Code Ann. § 50-6-239(c)(6) (2018). Here, Mr. Malone challenged the accuracy of the impairment rating issued by Dr. Petty and asked that the Court adopt Dr. West's rating instead. As explained below, the Court

adopts Dr. West's rating.

The Workers' Compensation Law provides that the impairment rating issued by the treating physician is presumed accurate, but the presumption may be overcome through contrary evidence that satisfies a preponderance standard. Tenn. Code Ann. § 50-6-204(k)(7). One way to overcome that presumption is by presenting affirmative evidence that the treating physician used an inappropriate method or interpretation of the *AMA Guides*. *See Mansell v. Bridgestone/Firestone N. Am. Tire*, 417 S.W.3d 393, 411 (Tenn. 2013).

The dispute over rating accuracy comes down to whether Mr. Malone had a good result or a fair result following his second knee replacement. Dr. Petty and Dr. West both used the same table from the *AMA Guides* but placed Mr. Malone in different classes. The difference between the classes concerns the surgical outcome. According to Dr. Petty, Mr. Malone had a good result and placed him in class two because he had good stability. Despite a reduced ROM per the *AMA Guides*, Dr. Petty determined the ROM was normal for an artificial knee. He assigned Mr. Malone twenty-five percent impairment to the lower extremity, which was the same impairment from the first surgery. Thus, Dr. Malone determined Mr. Malone suffered no additional impairment from the second surgery. As the authorized treating physician, his opinion is presumed correct.

Dr. West, on the other hand, determined Mr. Malone only had a fair result from the second surgery and rated his impairment as a class three. He based the rating on the reduced ROM, muscle atrophy, and painful symptoms Mr. Malone experienced after the second surgery. He assigned forty-three percent impairment to the lower extremity. After reducing the rating from the first surgery, Dr. West assigned Mr. Malone eighteen percent impairment to the lower extremity, or seven percent to the body as a whole.

This leaves the Court with two conflicting impairment ratings from two qualified physicians. However, the Court finds Dr. Petty misapplied the AMA Guides by failing accurately to account for the ROM loss. This, coupled with Mr. Malone's testimony about the many difficulties he experienced following the second knee replacement as opposed to the relative ease of recovery and activity following the first, was sufficient to overcome the presumption attached to Dr. Petty's opinion. Thus, the Court adopts Dr. West's rating.

**IT IS, THEREFORE, ORDERED** as follows:

1. URS shall pay Mr. Malone PPD benefits in the amount of $15,233.25.

3

2. URS shall provide Mr. Malone with future medical benefits for his injury. Dr. Petty remains the treating physician.

3. The Court further finds Mr. Malone's counsel, Julie Reasonover, is entitled to recover a fee of twenty percent, or $3,046.71, of the PPD award pursuant to Tennessee Code Annotated section 50-6-226.

4. URS shall pay court costs of $150.00 to the Court Clerk.

5. URS shall prepare and submit a Statistical Data Form (SD2) within ten business days of this order becoming final.

6. Absent an appeal to the Appeals Board, this order shall become final thirty days after issuance.

**ENTERED ON DECEMBER 28, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Medical Records
2. Dr. Petty Deposition Transcript and Attached Exhibits
3. Dr. West Deposition Transcript and Attached Exhibits
4. Final Medical Report, Form C30-A
5. Personnel File
6. Interrogatory Responses
7. Rehire Documentation
8. Wage Statement
9. First Report of Injury

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Hearing Order
4. Agreed Order
5. Joint Pre-Compensation Hearing Statement
6. URS's Prehearing Brief
7. Mr. Malone's Prehearing Brief
8. URS's Motion in Limine[1]
9. Mr. Malone's Response to Motion in Limine

---

[1] By agreement, the parties determined the following excerpts from Dr. Petty's deposition testimony are inadmissible: p. 20, ln. 18 – p. 21, ln. 25; p. 40, ln. 18 – p. 41, ln. 10; and, p. 45, ln. 23 – p. 46, ln.5.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on December 28, 2018.

| Name | Certified Mail | First Class Mail | Via Email | Service sent to: |
|------|---------------|------------------|-----------|------------------|
| Julie Reasonover, Employee's Attorney | | | X | julie@reasonoverlaw.com |
| Nathaniel Cherry, Employer's Attorney | | | X | ncherry@howardtatelaw.com |

_____

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**