FILED

JUNE 3, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:33 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **LOUIS GARASSINO,** | ) | **Docket No. 2014-07-0013** |
| **Employee,** | ) | |
| | ) | **State File No. 79380-2015** |
| **v.** | ) | |
| | ) | **Judge Joshua Davis Baker** |
| **WESTERN EXPRESS,** | ) | |
| **Employer.** | ) | |

## COMPENSATION HEARING ORDER

This matter came before the Court for a Compensation Hearing on May 19, 2016. The employee, Louis Garassino, and the employer, Western Express, stipulated to the majority of the dispositive legal issues, so the only remaining disputed issue concerned Mr. Garassino's degree of permanent impairment. The parties presented competing impairment ratings from the authorized treating physician and Mr. Garassino's evaluating physician. In comparing these two, the rating provided by the authorized treating physician enjoys a presumption of correctness. The Court, however, finds Mr. Garassino presented sufficient evidence to overcome the presumption and adopts the rating provided by the evaluating physician.

## History of Claim

Mr. Garassino is a fifty-nine-year-old resident of Stewart County, Tennessee, who worked as an over-the-road truck driver for Western Express. On July 3, 2014, he injured his back while using a crank to raise the height of a semi-trailer to attach to his truck. Western Express accepted the claim, provided medical care and temporary disability benefits. His compensation rate at the time of the injury was $223.43 per week. (T.R. 4 at ¶12.)

Mr. Garassino treated with Dr. Robert Weiss, who performed back surgery. On January 19, 2015, Dr. Weiss assigned Mr. Garassino an impairment rating of six percent to the body as a whole. (T.R. 4 at ¶7.) Dr. Weiss' medical note of the same date states the following concerning calculation of the rating:

The lumbar regional grid, table 17-4 is utilized and this patient falls into the classification of motion segment lesions, 1 to 9 percent, class 1. This is an intervertebral disc herniation at a single level with medically documented findings, with or without surgery. The patient had documented radiculopathy at the clinically appropriate level, present at the time of the initial examination, and now has resolved symptoms.

(Ex. 1 at 18.)

Dr. Weiss testified via deposition. Concerning the rating, he adamantly maintained Mr. Garassino rated as a class 1 on the lumbar regional grid because his radicular symptoms had resolved. (Ex. 3.)

Several months after receiving Dr. Weiss' impairment rating, Dr. David West evaluated Mr. Garassino and opined he retained thirteen percent impairment to the body as a whole from his back injury. (T.R. 4 at ¶8.) Dr. West testified Mr. Garassino should be rated as a class 2 on the lumbar spine regional grid per the *American Medical Association Guides to the Evaluation of Disability and Permanent Impairment* (AMA Guides) due to his radicular symptoms. (Ex. 2 at 15.) He stated the following:

We know he falls into a motion segment lesion because he had an intervertebral disc herniation, so that either puts him into a class 1 or a class 2. And again, what we just stated was the fact, if you look at class 2, he has an intervertebral disc herniation at a single level with medically-documented findings with or without surgery and with documented residual radiculopathy at the clinically appropriate level. That basically summarizes his current examination when I examined him with the exception of a modifier that I added to the 12% which is the fall and it was 13%.

*Id.* at 14. He further explained that a patient will "generally" receive a rating grade of "C" in a particular rating class as the C is in the middle of rating spectrum. *Id.* at 15-17. Thereafter, the rating would be adjusted based on results from other impairment rating criteria. Based on the results from clinical studies, functional impairments, and physical impairments, Dr. West increased Mr. Garassino's impairment rating by one percent from twelve to thirteen percent. *Id.* at 18.

Additionally, Dr. West agreed the only difference of opinion concerning his rating and that of Dr. Weiss concerned whether to place Mr. Garassino in a class 1 or class 2. He further agreed if Mr. Garassino's radiculopathy resolved, placement in class 1 would be appropriate. *Id.* at 32-33. However, even if the radiculopathy resolved and Mr. Garassino suffered a class 1 injury, he disagreed with Dr. Weiss' rating. He stated Dr. Weiss' rating should have been an eight percent rather than a six percent under class 1.

2

*Id*. at 42-44.  He explained that seven percent corresponds to a rating grade of C, the starting point for rating a class I injury for Mr. Garassino's injury before applying modifiers.  *Id*. at 24-26.  He opined Dr. Weiss incorrectly utilized the guides in rating Mr. Garassino's injury by starting his analysis with a five percent rating.  *Id*. at 26.

At the hearing, Mr. Garassino testified that he had several surgeries on his left hip prior to the accident and still experienced substantial pain in that area of his body as well as his groin.  He stated his right hip had been pain-free prior to the accident but acknowledged having right-hip replacement surgery prior to the accident.  Following the accident, Mr. Garassino testified he experienced some pain, but the pain was more in his legs than in his hip.  He stated: "I didn't have this problem before I hurt my back."

After the surgery, Mr. Garassino continued to experience pain in his right leg.  He explained the following about his pain after the surgery:

> It wasn't as bad . . . he fixed what he had to fix.  I mean I still have pains now down my . . . right leg—sporadic; well not sporadic but I mean it's the weather.  If it's lousy out, I know I've had surgery.  I'd be lying if I said it was everyday but more than once a week.

Mr. Garassino denied he told Dr. Weiss the pain in his right leg had resolved.  He further stated he told Dr. Weiss during the exam in February 2016 that he still had back pain and pain "shooting down" his legs.  Concerning the February exam, Mr. Garassino testified it was limited to Dr. Weiss inspecting his surgical scar and conducting a reflex test.  He denied that Dr. Weiss laid him on the table and pulled his legs straight up.  He stated the exam lasted only a few minutes.

In contrast, Mr. Garassino stated Dr. West's exam lasted about an hour.  He described how Dr. West laid him down on a hard table and lifted his legs up, sat him upright, and "grabbed both his legs" and performed a reflex test.

On cross-examination, Mr. Garassino admitted that the back surgery helped ease his back pain and also his leg pain "to some degree."  He further agreed he saw Dr. West only once, while he saw Dr. Weiss multiple times.  Additionally, he stated Dr. Weiss treated him well.

Mr. Garassino argued he rebutted the presumption of correctness attached to Dr. Weiss' impairment rating opinion.  He argued Dr. Weiss erred when calculating the impairment under the AMA Guides.  Specifically, Mr. Garassino argued Dr. Weiss used the wrong table and inappropriately calculated the modifiers.  He claimed the table Dr. Weiss utilized was an example table and should not have been used to calculate impairment.  Mr. Garasino also claimed Dr. Weiss erred in assigning a clinical study

3

modifier of zero because his MRI correlated with the diagnosis of a displaced S5-L1 nerve root that was compressed. Regarding the functional capacity modifier, Mr. Garassino argued Dr. Weiss also erred in assigning a zero. Because Mr. Garassino continued to suffer back and right-leg pain, his pain had not resolved and a functional capacity modifier of zero was inappropriate.

Mr. Garassino also argued that Dr. Weiss erred in concluding his radiculopathy resolved. He pointed to his own testimony that he never told Dr. Weiss his radiculopathy resolved and to the fact he continued to have right leg pain. Additionally, he argued the tests Dr. Weiss performed on him during the February 2016 exam were not designed to check for radicular symptoms. According to Mr. Garassino, the only evidence his radicular symptoms resolved is Dr. Weiss' testimony that Mr. Garassino told him they had resolved. Mr. Garassino, however, denied ever telling Dr. Weiss his symptoms resolved.

Mr. Garassino argued the impairment rating from Dr. West should be accepted over that of Dr. Weiss. Specifically, Mr. Garassino pointed to the numerous errors in Dr. Weiss' impairment rating. Additionally, he stated only Dr. West appropriately considered his radicular symptoms and placed in him in the correct injury class. For all these reasons, Mr. Garassino asked that the Court rule he incurred thirteen percent impairment from the workplace injury and award him benefits.

Western Express argued Mr. Garassino failed to overcome the presumption of accuracy afforded Dr. Weiss' opinion. Western Express maintained Dr. Weiss appropriately diagnosed that Mr. Garassino's radiculopathy resolved. It pointed to Dr. West's testimony that he had no reason to disagree with Dr. Weiss' examination of Mr. Garassino. It advocated for the Court's adoption of the six percent impairment rating. Western Express claimed Mr. Garassino's radiculopathy was resolved because it was not constant. Western Express essentially maintained intermittent radicular symptoms that arise only through changes in the weather did not meet the standard for a class 2 rating.

Western Express further argued Dr. West's opinion should be discounted because it is biased. It pointed out that Mr. Garassino paid Dr. West to perform the medical examination and provide a rating.

**Findings of Fact and Conclusions of Law**

The following general principles govern adjudication of this proceeding. Mr. Garassino has the burden of proof on all essential elements of a workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the

employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

The Workers' Compensation Law provides that the impairment rating issued by the treating physician is presumed accurate but the presumption may be overcome through contrary evidence that satisfies a preponderance standard. Tenn. Code Ann. § 50-6-204(k)(7) (2015). One of the way to overcome the presumption of accuracy is through presentation of affirmative evidence that the treating physician used an inappropriate method or interpretation of the AMA Guides. *See Mansell v. Bridgestone/Firestone N. Am. Tire*, 417 S.W.3d 393, 411 (Tenn. 2013). Mr. Garrison challenged the accuracy of the rating and asked that the Court adopt Dr. West's rating instead. As explained below, the Court finds Mr. Garrison overcame the presumption of accuracy attached to Dr. Weiss' rating and adopts the rating provided by Dr. West.

Dr. Weiss and Dr. West both used the same table from the AMA Guides, table 17-4, and the same class, Motion Segment Lesions, when rendering their respective impairment ratings. *See* Ex. 1 at 18; Ex. 2 at 14. Dr. Weiss, however, believed Mr. Garrison should be rated as a class 1, while Dr. West opined class 2 was more appropriate. Both classes apply whenever the employee has an intervertebral disc herniation at a single level with medically documented findings with or without surgery. Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment 570 (Rondinelli, Robert D., et al., eds. 6th ed. 2008). The difference concerns the presence of radiculopathy. A class 1 impairment rating applies when the employee has "documented resolved radiculopathy at clinically appropriate level or nonverifiable radicular complaints . . . *present at the time of the examination*." *Id.* A class 2 rating applies when the employee has "documented radiculopathy at the clinically appropriate level *present at the time of examination*." *Id.*

According to Dr. Weiss, Mr. Garrison merited a class 1 rating because he "had documented radiculopathy at the clinically appropriate level, present at the time of the initial examination, and now has resolved symptoms." (Ex. 1 at 18.) He maintained this position at his deposition. Additionally, Dr. Weiss examined Mr. Garrison again, approximately one year after he issued the initial rating and felt his condition still did not warrant a class 2 impairment rating per table 17-4. (Ex. 3.)

According to Mr. Garassino's testimony, however, Dr. Weiss performed only a short examination each time and only performed a reflex test in reaching his conclusion. Conversely, Mr. Garassino testified that Dr. West performed a more lengthy examination and additional tests to determine radiculopathy continued post-surgery. Based on the

examination, Dr. West rated his injury as a class 2 under table 17-4 of the AMA Guides.

In his deposition, Dr. West stated the class 1 rating proffered by Dr. Weiss rating should have been an eight percent rather than a six percent. (Ex. 2 at 42-44.) The Court agrees and finds his testimony concerning the fallacy of Dr. Weiss' rating sufficient to overcome the presumption of accuracy afforded it by statute.

In his office notes, Dr. Weiss stated the method he used to calculate the impairment rating: "The lumbar regional grid, table 17-4 is utilized and this patient falls into the classification of motion segment lesions, 1 to 9 percent, class 1." (Ex. 1 at 18.) In reviewing the class 1 rating for Motion Segment Lesions from table 17-4, the Court notes the range of ratings for class 1 runs from five to nine, not from one to nine. Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment at 570. Because Dr. Weiss specifically stated impairment should be evaluated under the "Motion Segment Lesions" class, a rating of six percent is incorrect. As Dr. West explained, Dr. Weiss should have begun at the midpoint rating for a class 1 injury, or seven percent, and the one percent added results in a rating of eight percent to the body as a whole. (Ex. 2 at 40-43.)

The Court agrees with Dr. West's opinion that Dr. Weiss incorrectly calculated Mr. Garassino's rating under the guides. Furthermore, because Dr. Weiss incorrectly applied the AMA Guides when rating Mr. Thomas, the Court also doubts his opinion concerning the resolution of Mr. Garassino's radiculopathy.[1] Dr. Weiss' incorrect rating, coupled with the Court's doubt concerning his opinion on radiculopathy and Mr. Garassino's testimony concerning the brevity of his exam when compared to Dr. West's, provide sufficient proof to overcome the presumption of accuracy attached to Dr. Weiss' impairment rating.

Additionally, the Court does not find Western Express' argument that Mr. Garassino's payment to Dr. West created a bias that undermined his impairment rating. Dr. Weiss rated Mr. Garassino incorrectly under the guides and Mr. Garassino's payment to Dr. West has no effect on the inaccuracy of Dr. Weiss' rating.

The Court adopts the rating provided by Dr. West. He performed a more thorough examination and applied to AMA Guides correctly to determine Mr. Garassino's impairment rating. The Court therefore finds Mr. Garassino suffered thirteen percent impairment to the body from his compensable work-related accident. The Court orders

---

[1] The Court reviewed the briefs each party provided prior to the compensation hearing and notes the chart Mr. Garassino's counsel provided comparing the two doctors' ratings was particularly helpful.

Western Express to provide permanent partial disability benefits in accordance with this order.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Garassino suffered thirteen percent impairment as a result of his workplace accident.

2. Pursuant to Tennessee Code Annotated section 50-6-207(3) (2015), Mr. Garassino is entitled to 450 weeks times his impairment rating of thirteen percent, which equates to 58.5 weeks at his compensation rate of $223.43, or $13,070.66 in permanent partial disability benefits.

3. The Court further finds Mr. Garassino is entitled to reasonable and necessary future medical treatment for his back injury. Dr. Weiss shall be the authorized treating physician, and Western Express shall pay for all reasonable and necessary care. Dr. Weiss or Mr. Garassino shall provide the bills for any treatment to Western Express.

4. The Court further finds Mr. Garassino's counsel, Julie Reasonover, provided good and valuable services to Mr. Garassino in pursuit of his claim and is therefore entitled to recover a fee of twenty percent of his permanent partial disability award pursuant to Tennessee Code Annotated section 50-6-226 (2015).

5. The Court further exercises its discretion pursuant to Tennessee Code Annotated section 50-6-239(c)(8) (2015) to award any and all costs related to Dr. West's examination of Mr. Thomas and the costs incurred in securing his testimony via deposition.

6. The Court assesses the $150.00 filing fee to Western Express for which execution shall issue as necessary.

7. This is a final order.

**ENTERED ON THIS THE  3rd  DAY OF JUNE, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

7

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board or the Tennessee Supreme Court.  To appeal your case to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00.  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  Failure to timely pay the filing fee or file the Affidavit of lndigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal.  Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of  the filing of the Compensation Hearing Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.  *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be

docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be "final" (see Tennessee Code Annotated section 50-6-239(c)(7) (2015)) and you must comply with the Tennessee Rules of Appellate Procedure.

# APPENDIX

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Initial Hearing Order
4. Amended Stipulations of the Parties

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulated Findings of Facts of the Parties:
- The alleged date of injury is July 3, 2014.
- The workers' compensation rate is $$223.43 per week.
- 

Stipulated Conclusions of Law of the Parties:
- This claim is governed by the Workers' Compensation Law for the state of Tennessee.
- Mr. Garassino filed the Petition for Benefit Determination within the applicable statute of limitations.

Exhibits:
- EXHIBIT 1: Medical Records – Collective
- EXHIBIT 2: Deposition of Dr. David West
- EXHIBIT 3: Deposition of Dr. Robert Weiss

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the  3  rd day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Julie Reasonover | | | X | julie@jstillman.com |
| Andrew Saulters | | | X | dsaulters@ortalekelley.com |

_____
**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**