**FILED**
**Jan 06, 2023**
**08:26 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Tom E. Wilder | ) | Docket No. 2022-01-0177 |
| | ) | |
| v. | ) | State File No. 41759-2021 |
| | ) | |
| Monroe County Government, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

---

### Affirmed and Remanded--Corrected

---

In this interlocutory appeal, the employer alleges the trial court erred in awarding temporary disability and medical benefits following an expedited hearing. The employee, a paramedic, was responding to a call with his partner when, while moving a patient in a "stair chair," he fell down porch stairs and struck the ground headfirst. He reported injuring his neck and low back. The employee acknowledged that he had been treating for chronic low back symptoms prior to the accident. The employer initially accepted the claim but later denied it and ceased all benefits. At the expedited hearing, the employer admitted that the fall occurred but asserted that the accident did not arise primarily out of and in the course and scope of the employment and that the employee's actions constituted willful misconduct. The trial court concluded the employer had not come forward with sufficient evidence supporting its affirmative defense and determined the employee had come forward with sufficient evidence to indicate a likelihood of prevailing at trial. The trial court ordered the employer to pay temporary disability and medical benefits, and the employer has appealed. We conclude the preponderance of the evidence supports the trial court's order. We further conclude the employer's appeal is frivolous. On remand, the trial court shall determine reasonable attorneys' fees and expenses to be paid by the employer as a result of its frivolous appeal.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Terri Bernal, Nashville, Tennessee, for the employer-appellant, Monroe County Government

Jeffrey W. Rufolo, Chattanooga, Tennessee, for the employee-appellee, Tom E. Wilder

1

Allison Lowry, Knoxville, Tennessee, for the defendant, Tennessee Subsequent Injury and Vocational Recovery Fund

**Factual and Procedural Background**

Tom E. Wilder ("Employee") worked as a paramedic for Monroe County Government ("Employer") beginning in October 2019. Employee had experienced symptoms of left-sided low back pain since 2016 or 2017 that worsened over time. Employee testified that his supervisor and co-workers were aware of his condition prior to the date of the accident and that, in fact, most of his co-workers experienced back problems due to the labor-intensive work. In early 2019, before beginning his employment with Employer, Employee began treating with Dr. David Hauge, a neurosurgeon. Because of a change in his insurance, he later went to another neurosurgeon, Dr. Joel Norman, who performed a lumbar laminectomy in May 2020. Employee testified Employer was aware of the reasons for this surgery. He also explained that Employer required all paramedics to obtain a return-to-work statement from their medical providers after any work absence due to medical treatment before they would be allowed to resume work. Employee stated that, after recovering from his surgery, he obtained such a statement from Dr. Norman indicating he had no work restrictions and returned to work as a paramedic.

Following surgery, Employee continued to experience symptoms in his low back and sought treatment from Dr. Ken Kozawa for chronic low back pain with left-sided radiculopathy. Employee testified his supervisor was aware of his continuing low back symptoms. As a result of his continuing symptoms, Dr. Kozawa referred him back to Dr. Hauge. Employee scheduled an appointment with Dr. Hauge's office for May 20, 2021. In early May 2021, Employee contracted COVID-19 and was out of work for over a week. On May 20, 2021, the day before he was scheduled to return to work, he saw a physician's assistant ("PA") in Dr. Hauge's office. As a result of that evaluation, the PA discussed treatment options, including the possibility of additional low back surgery, and recommended Employee see Dr. Hauge. However, Employee denied that the PA placed any restrictions on his activities.[1] He returned to work as scheduled the following day.

On May 24, 2021, which was Employee's second shift after having returned to work, Employee and his partner, Tina Hemming, were dispatched to a residence where an amputee had called for assistance. When they arrived at the scene, they evaluated the situation and determined the patient needed to be transported to a local hospital. Because they had to move the patient down a set of outdoor wooden stairs, they decided to use a device called a "stair chair." This chair includes a track that allows the chair to go down

---

[1] In the May 20 medical note, the PA indicated Employee has "chronic lumbar axial pain" and considered the possibility of a recurrent disc herniation. The note further indicated Employee agreed to a series of epidural steroid blocks and was advised to seek a "surgical consultation" with Dr. Hauge. Finally, the note indicated Employee planned to discuss "the possibility of modified duty" with his employer, but there was no indication in the medical note that the PA placed restrictions on his work activities at that visit.

2

the front edge of the stairs to the ground.  Employee testified that, after they had secured the patient into the chair, Ms. Hemming went to the front of the chair to help guide it down the stairs while Employee was at the back of the chair.  Once Ms. Hemming reached the bottom step, she stepped into a hole in the ground and her foot "rolled," causing her to lose her balance.  According to Employee, when this happened, the patient lost his balance, and in trying to assist the patient, Employee was pitched over the top of the chair and fell to the ground headfirst.

Employee asserted that when he struck the ground, he lost consciousness for some unknown period of time.  Ms. Hemming, on the other hand, testified that Employee did not lose consciousness because she heard him screaming when he hit the ground and he continued to communicate when she went to his aid.  According to Ms. Hemming, Employee asked her to call for another ambulance.  After she had done that, she tried to determine whether he was injured and decided to leave him on the ground until the other ambulance had arrived.

Following the accident, Employee was transported to Sweetwater Hospital.  He reported a headache, dizziness, neck pain, right shoulder pain, and right lower back pain with radiation into his right leg.  There, he underwent a cervical CT scan.  An emergency room physician evaluated him, restricted him from working for two shifts, and released him.  Employee attempted to return to work several days later, but his symptoms prevented him from working more than one shift.  Employee then selected Chota Medical Center from Employer's panel and was seen there several times before being referred to a neurologist.  He selected Dr. Jack Scariano from another panel provided by Employer.  Employee was also referred to a neurosurgeon and, after explaining to Employer's representative that he had already been seeing Dr. Hauge prior to the accident, the representative agreed to allow him to return to Dr. Hauge.

Employee treated with Dr. Scariano and Dr. Hauge for approximately six months.  During that time, Employee received temporary total disability benefits from Employer's insurer.  A lumbar MRI was completed in June 2021, which Dr. Hauge reported as showing nerve root impingement at L5-S1 and a right-sided disc protrusion at L4-5.[2]  Dr. Hauge opined that Employee had sustained a new low back injury as a result of his work-related fall.  A CT was completed in August 2021, which Dr. Hauge reported as showing a facet fracture at L4-5.  Dr. Hauge described this as a "new finding" that did not pre-date the work-related fall.  At that time, Dr. Hauge recommended an L4-5 posterior fusion.

Dr. Scariano first evaluated Employee in July 2021, at which time Employee was complaining of headaches and neck pain.  Dr. Scariano ordered MRIs of the brain and cervical spine.  According to Dr. Scariano, the cervical MRI revealed "prominent severe

---

[2] Employer did not refute Employee's testimony at the expedited hearing that his previous low back symptoms were primarily on the left side.

stenosis at C4-C5 and increased cord signals in that area." Dr. Scariano expressed concern about a pinched spinal cord and indicated to Employee that he needed neck surgery. He opined that "the primary cause of [Employee's] need for neck surgery . . . is the May 24, 2021 fall [Employee] had at work."

Thereafter, based on a referral from Dr. Scariano, Employee was evaluated by Dr. Hauge for possible cervical spine surgery. Dr. Hauge stated that he compared the post-accident MRI to a pre-accident cervical MRI dated March 2019 and found "more pronounced changes" in the later MRI. As a result, Dr. Hauge recommended that Employee first proceed with cervical fusion surgery before lumbar surgery. However, in November 2021, Employer filed a Notice of Change or Termination of Compensation Benefits (Form C-26), which purportedly served as its notice of denial of the claim.[3] As a result, it terminated Employee's medical and disability benefits. On the Form C-26, Employer listed "Tenn[.] Code 50-6-110 and [p]re-existing conditions" as the bases for its termination of benefits. Employee elected to proceed with the cervical fusion at the C4-5 through C6-7 levels in March 2022 at his own expense.

At the expedited hearing, Employer expounded on the reasons for its denial of the claim. First, Employer asserted that Employee's various descriptions of how the accident happened were inconsistent in certain respects and defy common sense in other respects. As a result, according to Employer's theory, these inconsistencies and irregularities constituted circumstantial evidence that Employee *intended* for the accident to happen and, therefore, it could not have arisen primarily out of or in the course and scope of his employment. Second, Employer asserted it had a safety rule in place that required paramedics not to work if they subjectively believed they were unable to fulfill the functions of their job without putting themselves, their co-workers, or the patients at risk. Employer posited that, because Employee had been treating for low back pain prior to the work accident, he should not have been working as a paramedic despite the fact that no medical provider had restricted him from working. This, according to Employer, constituted willful misconduct sufficient to support its denial of the claim. Following the expedited hearing, the trial court issued an order compelling Employer to pay certain past medical expenses, pay past due temporary disability benefits, and reinstate both temporary disability and medical benefits. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). The interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N.*

---

[3] Employer did not file a Form C-23 Notice of Denial.

*Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

It is well-settled that, at an expedited hearing, an employee's burden of proof is different than the burden at a compensation hearing. *See, e.g.*, *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). "While we agree that an employee need not prove his or her claim by a preponderance of the evidence at an expedited hearing to obtain temporary disability or medical benefits, an employee nevertheless has the burden to come forward with sufficient evidence of an injury by accident from which the court can conclude that he or she is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1)." *Id.* (citation omitted). We have also addressed burdens of proof at an expedited hearing in circumstances where an employer is asserting an affirmative defense, as follows:

> Employer asserts Employee's injury is not compensable due to Employee's willful misconduct in failing to follow the safety instructions of her supervisor and/or her willful failure to use a safety device. Tennessee Code Annotated section 50-6-110(a)(1) and (4) provide, respectively, that no compensation shall be allowed for an injury due to the employee's willful misconduct or the employee's willful failure or refusal to use a safety device. Section 50-6-110(b) provides that if an employer defends on either of these grounds the burden of proof shall be on the employer to establish the defense. Irrespective of the burden of proof at trial that is placed upon an employer who asserts affirmative defenses under section 50-6-110(a), section 50-6-239(d)(1) provides that the standard applicable in determining whether an employee is entitled to benefits at an expedited hearing is whether the evidence is sufficient for the court to determine that the employee would likely prevail at a hearing on the merits . . . .

*Iboy v. Kenten Mgmt., LLC*, No. 2017-06-1855, 2018 TN Wrk. Comp. App. Bd. LEXIS 23, at *13-14 (Tenn. Workers' Comp. App. Bd. May 8, 2018) (internal quotation marks and citation omitted). We further explained that "a trial court can consider whether an employer has come forward with sufficient evidence in support of an affirmative defense at an expedited hearing, but, in the context of an expedited hearing, such considerations are relevant only in assessing whether the employee is likely to prevail at trial." *Id.* at *18.

*Likelihood of Prevailing at Trial*

In the present case, it is undisputed that Employee fell on the date in question. Employee's partner corroborated his testimony that the fall occurred. She described him "flying over the railing." She further testified that he was "screaming" and "hollering" after he fell and that he requested an ambulance. In contrast to this testimony, however, Ms. Hemming also admitted that she could not explain why Employee lost his balance or how he went over the railing. She did not believe she had jerked the chair hard enough to cause him to fall as he did. Yet, she indicated she could not state Employee purposely flung himself over the railing and stair chair. No other witnesses to the accident testified at the expedited hearing.[4]

With respect to whether the accident arose primarily out of and in the course and scope of the employment, Employer put forth a theory at the expedited hearing that Employee knew he needed low back surgery prior to this event and allegedly could not afford it. Employer further suggested that, at the moment his partner stepped in the hole and rolled her ankle, Employee made a split-second decision to launch himself over the stair chair and/or railing and fall headfirst onto the ground in an effort to "take advantage" of the situation and ensure his medical treatment from that point forward would be covered as a work-related injury. Yet, at this stage of the case, Employer's theory is just that -- a theory. It is based on supposition, conjecture, and a modicum of circumstantial evidence as to possible motive, but it lacks sufficient evidence to support it. In short, we have no difficulty concluding that the preponderance of the evidence presented at the expedited hearing supports a determination that Employee is likely to prevail at trial in proving a compensable accident that arose primarily out of and in the course and scope of the employment.

*Willful Misconduct Defense*

As discussed above, an employer asserting an affirmative defense as described in Tennessee Code Annotated section 50-6-110 has the burden of proving every essential element of that defense by a preponderance of the evidence at trial. Tenn. Code Ann. § 50-6-110(b). However, in the context of an expedited hearing, the question is whether the Employee has come forward with sufficient evidence to convince the trial court he or she is likely to prevail at trial. In making that determination, a trial court can consider whatever evidence Employer presents regarding its affirmative defense. *Iboy*, 2018 TN Wrk. Comp. App. Bd. LEXIS 23, at *14. Here, Employer asserted that, by continuing to work after being told he may need more surgery at some point in the future, Employee violated a known safety rule because he knew or reasonably should have known his low back condition disqualified him from performing the functions of a paramedic.

---

[4] Presumably, the patient was a potential witness, but he was not called as a witness by either party.

The willful misconduct defense was addressed by the Tennessee Supreme Court in *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012). After reviewing the historical context of both the willful misconduct defense and the willful failure to use a safety device defense, the Court adopted Professor Larson's four-part test for both defenses. *Id.* at 453. To successfully prove such a defense, the employer must show: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. *Id.*

In *Oglesby v. United Parcel Service, Inc.*, No. 2017-08-1148, 2018 TN Wrk. Comp. App. Bd. LEXIS 34 (Tenn. Workers' Comp. App. Bd. July 19, 2018), we addressed the *Mitchell* test in the context of a maintenance mechanic who suffered an arm injury when it was pulled into a machine. The employer in *Oglesby* had a safety rule called "lock out/tag out," which required employees to de-energize and tag a machine before beginning any repairs. *Id.* at *2-3. However, maintenance mechanics were given discretion in certain circumstances to perform "live repairs" without de-energizing the machine. *Id.* at *2. Because the employee had certain discretion in deciding how to perform the repair, the issue was whether the employee had actually violated a safety rule. *Id.* at *12. In affirming the trial court's interlocutory order for medical benefits, we concluded, "whether Employee was correct or mistaken in his interpretation of Employe[r]'s safety rules, there is insufficient evidence he intentionally took action in violation of those rules." *Id.* at *12-13.

In the present case, every witness who spoke to this issue at the expedited hearing admitted that paramedics are allowed to use their discretion to determine whether they are physically capable of performing job functions at any given time. Employer presented no evidence that Employee's supervisor or any other person in a position of authority believed Employee was incapable of performing the job functions of a paramedic at any point prior to the accident. Employee's partner testified she had no reason to believe Employee was incapable of performing his job functions. Employee himself testified that, upon his return to work on May 21 following his recovery from COVID-19, he believed he was capable of performing all job functions. The PA at Dr. Hauge's office did not place any restrictions on his activities, and there is no evidence any other medical provider had assigned any physical restrictions. Moreover, Employee returned to work on May 21 without incident. In short, Employer presented no evidence at the expedited hearing that Employee knowingly violated a known safety rule. In addition, Employer presented no evidence that it had enforced this rule in the past or had ever disciplined a paramedic for his or her subjective but incorrect belief that they were capable of performing the job functions. Thus, we conclude Employer presented no evidence at the expedited hearing of Employee's alleged willful misconduct, and we find Employer's arguments on appeal to be without merit.

*Frivolous Appeal*

We recently addressed the issue of frivolous appeals in *Scruggs v. Amazon.com Services, LLC*, Nos. 2021-08-0875 & 2021-08-0876, 2022 TN Wrk. Comp. App. Bd. LEXIS 27, at *13-14 (Tenn. Workers' Comp. App. Bd. June 27, 2022), as follows:

> As we have noted previously, a frivolous appeal is one that is devoid of merit or brought solely for delay. Litigants should not be required to endure the hassle and expense of baseless litigation. Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success.

Here, in its notice of appeal, Employer asserts that the trial court erred "in making a preliminary finding that Employee's accident and/or injury arose primarily out of and in the course and scope of his employment." Yet, in its brief, Employer acknowledged that "a fall occurred while Employee was attempting to remove a patient from his residence for medical transport." Thus, Employer has conceded that the fall occurred within the course and scope of Employee's job.

As the trial court noted in its order, it was required to find that Employee "is likely to prevail at a hearing on the merits," which is the correct standard at an expedited hearing. Although the record is unclear on this point, Employer's theory seems to be that, although Employee admittedly fell while moving a patient down a set of stairs, this fall did not arise primarily out of the employment because he *intended* to fall. As we concluded above, however, Employer's theory that Employee "made the decision to go over the railing" is unsupported by any credible evidence at this stage of the case. Employer's reliance, in turn, on this same insufficient evidence to argue on appeal that the trial court erred is devoid of merit.

Further, in its notice of appeal, Employer asserted that the trial court "erred in making a preliminary finding that Employee did not violate a safety rule." First, missing from Employer's characterization of this issue is the critical word "willfully." As noted above, there is scant evidence that Employer had a set safety rule in place as alleged. Instead, the evidence supports a finding that Employer had, at most, an understanding with its paramedics that they should not report for work as a paramedic if they subjectively believed they were incapable of safely performing the job functions. There is no evidence whatsoever in this record that Employee knowingly or willfully violated this understanding. Second, even if a formal safety rule existed as Employer claims, it offered no evidence of any bona fide enforcement of this rule, which is an essential element of the willful misconduct defense. *See Mitchell*, 368 S.W.3d at 453.

We conclude this appeal had no reasonable chance of success and is frivolous. Pursuant to Tenn. Comp. R. and Regs. 0800-02-22-.09(4), we remand the case for the trial

court to determine reasonable attorneys' fees and expenses to be awarded to Employee as a result of Employer's frivolous appeal.[5]

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all respects and remand the case for an award of reasonable attorneys' fees and costs arising from the frivolous appeal and any other proceedings as may be necessary. Costs on appeal are taxed to Employer.

---

[5] In a second appeal of the *Scruggs* case, we recently concluded that a remand to the trial court for the purpose of awarding attorneys' fees and costs following a frivolous appeal is in accordance with applicable statutes and regulations. *See Scruggs v. Amazon.com Services, LLC*, Nos. 2021-08-0875 & 2021-08-0876, 2022 TN Wrk. Comp. App. Bd. LEXIS 46, at *16-17 (Tenn. Workers' Comp. App. Bd. Dec. 19, 2022).



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Tom E. Wilder | ) Docket No. 2022-01-0177 |
| | ) |
| v. | ) State File No. 41759-2021 |
| | ) |
| Monroe County Government, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of January, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Terri L. Bernal | | | | X | terri.bernal@mgclaw.com carmen.perez@mgclaw.com |
| Jeff Rufolo | | | | X | jrufolo@summersfirm.com johnmwolfejr@comcast.net |
| Allison Lowry | | | | X | allison.lowry@tn.gov |
| Audrey A. Headrick, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov