

**FILED**
**Oct 16, 2023**
**08:58 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Wilma Randall | ) Docket No.      2021-02-0225 |
| | ) |
| v. | ) State File No.   1723-2021 |
| | ) |
| Food Lion and Delhaize America, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard October 5, 2023 |
| Compensation Claims | ) at Knoxville |
| Brian K. Addington, Judge | ) |

---

### Affirmed and Remanded

---

The employee filed an interlocutory request for medical treatment she claims is needed due to repeated exposures to cleaning supplies used in the course and scope of her employment. The employer denied the claim, asserting there is no evidence that the employee's alleged pulmonary conditions arose primarily from or were aggravated by workplace exposures to cleaning chemicals. Following an expedited hearing, the trial court determined that the employee had not come forward with sufficient evidence indicating a likelihood of prevailing at trial on the issue of medical causation, and the employee has appealed. Upon careful consideration of the record and arguments of counsel, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

G. Todd East, Kingsport, Tennessee, for the employee-appellant, Wilma Randall

Daniel I. Hall, Bristol, Tennessee, for the employer-appellee, Delhaize America, Inc.

### Factual and Procedural Background

Wilma Randall ("Employee") worked in the deli and bakery sections of a Food Lion store in Erwin, Tennessee, apparently operated by Delhaize America, Inc. ("Employer"). Employee was usually responsible for closing those areas of the store each night and was required to disassemble and clean the mechanical slicers and a rotisserie and to clean countertops, windows, doors, and floors. In performing these activities, she used cleaning supplies provided by Employer.

1

Beginning in or about June 2020, Employee experienced chronic coughing and other pulmonary symptoms. She subsequently reported to Employer that she believed her symptoms were caused by her repeated exposure to the chemicals she used to clean her work areas. She noted that Employer had changed to a different supplier of such cleaning supplies in Spring 2020, and the new cleaning agents smelled stronger than the old ones and left a metallic taste in her mouth.

Employee sought treatment at an emergency room in September 2020, and a chest x-ray completed during that visit indicated Employee had "no active airspace disease or edema" and "no acute infiltrate." She was diagnosed with bronchitis and prescribed medications. Employee returned to the emergency room twice in October 2020 due to "ongoing cough and wheezing for several days despite antibiotics." During the first of those visits, the physician concluded she did not suffer from any "emergency pathology" and referred her to her primary care physician. A week later, Employee was hospitalized due to "community acquired pneumonia" and "suspected 2019 novel coronavirus infection." A CT scan revealed "bilateral upper lobe ground glass opacities," but COVID-19 tests were negative. In a "Discharge Summary," Dr. Imran Ali Khan opined Employee suffered from "hypersensitivity pneumonitis" and referred Employee to a pulmonologist. Employee was also advised to "avoid exposure to dust at work which could have been the contributing cause for her shortness of breath and hypersensitivity pneumonitis."

Thereafter, Employee sought treatment from a pulmonologist, Dr. April Lambert-Drwiega, who diagnosed Employee in November 2020 with reactive airways disease, interstitial lung disease, and pneumonitis, among other diagnoses.[1] Employee described to Dr. Lambert the cleaning agents she used at work for "cleaning and sanitizing" and the effect she believed those chemicals were having on her breathing. Dr. Lambert ordered pulmonary function testing and a CT scan and prescribed several medications.

In February 2021, Dr. Lambert reviewed the results of Employee's most recent CT scan and noted evidence of "persistent diffuse airspace opacity." She further noted that pulmonary function testing revealed "small airway disease but no other abnormality." In response to Employee's request, Dr. Lambert released Employee to return to work as of March 1, 2021, and advised her to avoid workplace chemicals "because they cause a lot of respiratory irritation for her."

In March 2021, Dr. Lambert performed a diagnostic bronchoscopy and biopsy. The post-procedure diagnosis was listed as "multilobar lung infiltrate," and the biopsy culture tested negative. Employee was advised to continue taking medications as prescribed. In September 2021, in response to a written questionnaire from Employee,

---

[1] During her deposition, Dr. Lambert-Drwiega testified that she was typically addressed as "Dr. Lambert," which we will do in this opinion.

Dr. Lambert marked "yes" when asked whether Employee's lung conditions were "due to exposure to chemicals she was required to use while performing the duties of her job." In a handwritten addendum, Dr. Lambert clarified that Employee's exposure to workplace chemicals "worsened her breathing." She indicated Employee had reached maximum medical improvement but could not state when.[2]

Employer denied her claim, asserting that Employee's pulmonary condition did not arise primarily out of her employment and was not aggravated by her alleged workplace exposures to cleaning supplies. Further, Employer asserted that Employee has a history of pulmonary issues, including multiple episodes of bronchitis and sinusitis, dating back to at least 2008. Finally, although admitting that its distributor of cleaning supplies changed in 2020, Employer argued there was no significant difference between the cleaning agents used prior to the date of the change and those used after. In preparation for an expedited hearing, Employer produced an expert opinion from Dr. Christopher Holstege, a toxicologist, indicating that he believed Employee had contracted an infectious illness, likely COVID-19, in early-to-mid 2020 and was experiencing lingering pulmonary symptoms related to that illness. Employee responded that she was tested for COVID-19 several times in Fall 2020 and received a negative result each time.

Following an expedited hearing, the trial court denied Employee's request for medical benefits, reasoning that Employee had not come forward with sufficient evidence indicating a likelihood of prevailing at trial in proving the occurrence of a compensable occupational illness or accident. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). However, we need not give deference to a trial court's findings "based upon documentary evidence such as depositions." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). The interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

---

[2] Dr. Lambert later testified Employee likely reached maximum medical improvement in June 2022.

3

**Analysis**

On appeal, Employee asserts the trial court erred in denying her interlocutory request for medical benefits because "[h]er treating physician causally connected her injuries/diagnosis." As we have noted previously, although an injured worker retains the burden of proof at all stages of a workers' compensation claim, a trial court can grant relief at an expedited hearing if the court is satisfied that the employee has met the burden of showing that he or she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1). In making this determination, the trial court can consider both expert medical opinions and corroborative lay testimony. *See, e.g.*, *Thomas v. Zipp Express*, No. 2015-06-0546, 2016 TN Wrk. Comp. App. Bd. LEXIS 35, at *12-13 (Tenn. Workers' Comp. App. Bd. Aug. 2, 2016).

Tennessee Code Annotated section 50-6-102(12) defines "injury" to include occupational diseases "including diseases of the heart [and] lung . . . arising primarily out of and in the course and scope of employment." The phrase "arising primarily out of and in the course and scope of employment" has been defined to mean "that the employment contributed more than fifty percent (50%) in causing . . . the need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(B). Thus, at an expedited hearing where an employee seeks medical benefits allegedly necessitated by an occupational disease, the employee must come forward with sufficient evidence that he or she is likely to prevail at trial in proving that the employment contributed more than 50% in causing the occupational disease.

Moreover, it is well established that a trial judge "has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Reagan v. Tennplasco*, No. M2005-02020-WC-R3-CV, 2006 Tenn. LEXIS 1209, at *10 (Tenn. Workers' Comp. Panel Dec. 27, 2006). As explained by the Tennessee Supreme Court, "[w]hen faced . . . with conflicting medical testimony . . ., it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted). We review such determinations for an abuse of discretion. *Barnes v. Yasuda Fire & Marine Ins. Co.*, No. W2000-02559-SC-WCM-CV, 2001 Tenn. LEXIS 696, at *11 (Tenn. Workers' Comp. Panel Sept. 24, 2001) ("[W]e cannot say the trial court abused its discretion" by concluding "the opinion of certain experts should be accepted over that of other experts.").

Here, the trial court considered the opinions of two medical experts. Dr. Lambert testified that she acquired her degree in osteopathic medicine, completed an internship in internal medicine, and completed a fellowship in pulmonary medicine and critical care. She has practiced in Tennessee for twelve years and currently works in a pulmonary practice. She treated Employee beginning in November 2020 and has examined her five

4

or six times. She diagnosed Employee with hypersensitivity pneumonitis and reactive airway disease. During her direct testimony, Dr. Lambert stated that she believed Employee's symptoms "were as a result of being exposed to . . . noxious fumes at work," which she then specified were "the cleaning agents at work."

On cross-examination, Dr. Lambert acknowledged that she is not board-certified in pulmonology or toxicology and does not generally treat infectious diseases. Prior to her deposition, Dr. Lambert did not review Employee's medical records from her emergency room visit in September 2020, but did review a discharge summary following her hospitalization in October 2020. She did not review any of Employee's medical records prior to 2020 and was not aware of any pre-existing history of pulmonary problems. With respect to a possible COVID-19 diagnosis, Dr. Lambert admitted that tests done more than three months after symptoms develop may be negative despite an earlier infection. She also agreed that some patients who contract COVID-19 develop "long-term effects."

Dr. Lambert also acknowledged during cross-examination that she was not aware of the identities or types of chemicals Employee used at work and did not know the extent or duration of any such exposures. She theorized that any cleaning agent with bleach or ammonia could have been a cause, but she was unaware of whether any of the cleaning agents Employee used at work contained those chemicals. She was not aware of any "large acute exposure" to workplace cleaning agents that required immediate medical attention, and she did not know how long Employee had been using the workplace cleaning agents. Finally, Dr. Lambert agreed that, in late 2020, the most common differential diagnosis for a patient showing radiological evidence of "ground glass opacities" was COVID-19.

Employer presented the testimony of Dr. Christopher Holstege, a physician board-certified in emergency medicine and medical toxicology. He currently serves as Chief of the Division of Medical Toxicology at the University of Virginia, where he has worked since 1999. He testified that he "routinely" treats patients who suffered from chemical exposures. With respect to the current case, Dr. Holstege testified he had reviewed Employee's medical records, both before and after her alleged workplace exposures. He also reviewed radiological studies and informational documents regarding Employer's cleaning agents and Employer's "training materials" addressing how cleaning supplies are utilized at Employer's worksite. Dr. Holstege concluded that Employee's pulmonary conditions were not caused by occupational exposure to chemicals or cleaning agents.

In support of his causation opinion, Dr. Holstege noted a significant pre-existing history of pulmonary symptoms, prior treatment with inhalers and steroids, and other evidence of repeated episodes of bronchitis. Dr. Holstege also noted that chemical exposures that are significant enough to cause the type of symptoms Employee had experienced would also likely cause symptoms to other body parts such as the eyes, but

there were no such indications in the medical records.  Based on his review of emergency room and hospital records dated in Fall 2020, as well as the prior medical records and radiological studies, Dr. Holstege opined that Employee had suffered from an infectious process in mid-2020 – likely COVID-19 – and was experiencing long-term symptoms from that infection.

In reviewing the trial court's determinations, we cannot conclude that the trial court erred in its evaluation of the expert medical proof submitted at this interlocutory stage of the case.  The trial court concluded that Dr. Holstege's opinion was entitled to greater weight because he had reviewed a more complete set of medical records, radiological studies, and documentation regarding the cleaning agents used in Employee's workplace.  Dr. Lambert, on the other hand, acknowledged she had not reviewed those same materials prior to forming her opinion.  In short, our review of the record indicates the evidence does not preponderate against the trial court's determinations.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employee.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Wilma Randall | ) | Docket No. 2021-02-0225 |
| | ) | |
| v. | ) | State File No. 1723-2021 |
| | ) | |
| Food Lion and Delhaize America, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 5, 2023 |
| Compensation Claims | ) | at Knoxville |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 16th day of October, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Todd East | | | | X | todd@toddeast.com jennifer@toddeast.com |
| Daniel Hall | | | | X | dhall@midkifflaw.com mkupp@midkifflaw.com |
| Brian K. Addington, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov